PEOPLE v JORDAN

Docket No. 267152. Submitted April 4, 2007, at Detroit. Decided April 19, 2007. Approved for publication May 31, 2007, at 9:05 a.m. Leave to appeal sought.

Childred E. Jordan was convicted by a jury in the Genesee Circuit Court, Geoffrey L. Neithercut, J., of first-degree criminal sexual conduct, first-degree home invasion, and unarmed robbery. The defendant appealed.

The Court of Appeals *held*:

1. The trial court did not abuse its discretion in admitting evidence of statements the victim made to a neighbor and to a friend shortly after she was raped and robbed by an intruder who broke into her apartment. As decided in *Crawford v Washington*, 541 US 36 (2004), the Confrontation Clause of US Const, Am IV bars testimonial hearsay against a criminal defendant unless the declarant was unavailable and the defendant had a prior opportunity to cross-examine the defendant. Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution. Neither the neighbor nor the friend was a police agent conducting an interrogation when they heard the victim's statements. Even if they can be considered agents of the police, the statements made by the victim to them were nontestimonial because the statements were made under circumstances objectively indicating that the primary purpose of the interrogation was to enable police assistance to meet an ongoing emergency.

2. The defendant's claim on appeal that the Confrontation Clause barred admission of evidence of the victim's statements to a police detective and to a 911 supervisor was not preserved for appeal in the absence of an objection at trial. The trial court properly admitted the challenged testimony because the 911 supervisor merely authenticated at trial a copy and a transcript of the original 911 tape and the detective's testimony was not

objected to by trial counsel as part of a strategy to point out discrepancies in the victim's statements to the detective and to the victim's friend concerning the rape. Even if the court erred in admitting the challenged testimony, any such error would not amount to plain error affecting the defendant's substantial rights in light of other evidence of the defendant's guilt. The defendant has not shown that the cumulative evidence of the 911 supervisor's and the detective's testimonies resulted in the conviction of an actually innocent person or undermined the integrity of the judicial system.

3. The defendant was not denied the effective assistance of trial counsel when counsel failed to argue that the prosecution had not provided adequate independent evidence of a startling event in support of the admission of a statement by the victim under the excited utterance exception to the hearsay rule, or when counsel failed to object to incorrect jury instructions on unarmed robbery. Given evidence that an apartment window was torn out, that the victim's lip had been injured, and that the defendant's semen was recovered from a vaginal swab of the victim and from her clothing, it would have been futile for counsel to argue that there had not been sufficient independent evidence showing that a startling event actually occurred. Although the trial court, when instructing on unarmed robbery under the pre-amendment version of the statute then in effect, erred in informing the jury that force could occur in the course of committing the larceny, including in the flight of the offender or in the retention of the property taken, the error was harmless. The jury could not have concluded that force was used only after the larcenies in light of evidence indicating that the defendant put the victim in fear for her safety before taking her television and money.

Affirmed.

CRIMINAL LAW — RIGHT TO CONFRONT WITNESSES — NONTESTIMONIAL HEARSAY.

Statements made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance of an ongoing emergency are nontestimonial and are not subject to the Confrontation Clause prohibition of testimonial hearsay against criminal defendants unless the declarant of such testimonial hearsay is unavailable and the defendant has had a prior opportunity to cross-examine the declarant (US Const, Am VI).

*Patrick K. Ehlmann* for the defendant.

Before: NEFF, P.J., and O'CONNELL and MURRAY, JJ.

PER CURIAM. Defendant appeals as of right from his convictions by a jury of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(c) (circumstances involving commission of any other felony), first-degree home invasion, 750.110a(2), and unarmed robbery, MCL 750.530. We affirm.

At about 6:00 a.m. on October 20, 1998,[1] the victim called Flint 911 to report that someone was trying to break into her apartment. The police responded to the wrong address, and a man who had broken into her apartment through a window confronted the victim, a 73-year-old woman who used a walker. The intruder, defendant, tore the telephone off the wall, robbed and raped the victim, and then fled.

The victim then went outside in her nightgown and yelled for help. The owner and operator of a service station (Ronald Ferris) across the street responded, and 911 was again called. The police arrived at the scene 45 minutes to an hour after the first 911 call. When Ferris first encountered the victim, she told him that she had been raped, but she failed to tell that to the police detective when he first questioned her, indicating only that the perpetrator demanded money (which she gave him), took her television, and then tore her telephone off the wall.

After the detective left, the victim's landlord and close friend Merl Avery arrived, and the victim told her about the break-in and theft but did not mention the rape. After speaking with Ferris, Avery asked the

---

[1] The long delay between the crime and the trial in the fall of 2005 was caused by the fact that the police had no leads to a suspect and only after deoxyribonucleic acid (DNA) technology allowed a cross-match was defendant identified as the perpetrator. In the meantime, the victim died.

victim why she did not mention the rape, and the victim replied that the perpetrator told her that he would kill her if she told anyone. Avery then took her to the police station, where she told the detective that she had been raped. A vaginal swab and a swab from the victim's clothing both matched defendant's deoxyribonucleic acid (DNA) sample. The victim died before trial of causes unrelated to this case.

Defendant argues that the trial court erred when it ruled that the victim's statements to Ferris and Avery were admissible. We disagree.

The admissibility of evidence is within the sound discretion of the trial court and will not be reversed unless the trial court abused its discretion. *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003). However, a preliminary question of law related to the admissibility of evidence is reviewed de novo. *Id.*

*Crawford v Washington*, 541 US 36, 68; 124 S Ct 1354; 158 L Ed 2d 177 (2004), held that the Confrontation Clause[2] bars testimonial hearsay against a criminal defendant unless the declarant was unavailable and the defendant had a prior opportunity to cross-examine the declarant.[3] *Crawford* also held that state hearsay rules could govern the admissibility of nontestimonial hearsay without offending the Confrontation Clause. *Id.* Thus, the Confrontation Clause does not bar the testimony at issue unless the statements of the declarant were "testimonial."

Defendant argues that declarant's statements were testimonial under *Davis v Washington*, 547 US ___; 126 S Ct 2266, 2273–2274; 165 L Ed 224 (2006), which held:

---

[2] US Const, Am VI.

[3] There is no indication or argument made that defendant had any opportunity to cross-examine the victim.

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

Defendant further argues that Ferris should be considered an agent of the police because "he acted as a police agent in relaying [the victim's] report to the 911 operator and must have been seen as an agent . . . by the declarant [because] she told him 'to please call the police.' " Because defendant cites no authority to support his agency theory, this Court need not address defendant's agency argument. *People v Mackle*, 241 Mich App 583, 604 n 4; 617 NW2d 339 (2000).

Nevertheless, we conclude that Ferris was not an agent of the police. Although Ferris relayed information to the police at the request of the victim, this would, at most, *arguably* make him an agent of the victim. See *Meretta v Peach*, 195 Mich App 695, 697; 491 NW2d 278 (1992) ("An agency relationship may arise when there is a manifestation by the principal that the agent may act on his account.")

We also reject defendant's argument that Ferris should be treated as an agent of the police because the victim viewed him as such. An ostensible agency may be created " 'when the principal intentionally or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him.' " *VanStelle v Macaskill*, 255 Mich App 1, 9; 662 NW2d 41 (2003) (citation omitted). There is no indication that the police did anything to clothe Ferris as an agent.

Similarly, we reject defendant's argument that Avery should be treated as an agent of the police. Avery testified that she and the victim were "like family," had known each other for about 20 years, had engaged in many activities together, and the two were so close that Avery had moved the victim into her home for years after the assault. Thus, it is clear that the victim did not view her longtime friend as an ostensible agent of the police for obtaining statements for use in court, but as a friend concerned for her well-being and need for treatment.

Even assuming that either Ferris or Avery conducted the functional equivalent of a police interrogation, the victim's statements were nontestimonial because they were made "under circumstances objectively indicating that the primary purpose of the interrogation [was] to enable police assistance to meet an ongoing emergency." *Davis, supra* at 2273-2274. We hold that questions necessary to obtaining or providing emergency medical care are nontestimonial.[4] The 73-year-old victim, clothed in her nightgown, was outside in the early morning hours yelling for help because she had just been raped and robbed. She had yet to have a police response to her calls for help and was in need of emergency medical treatment. Under the circumstances, "any reasonable listener would recognize that [the victim] was facing an ongoing emergency." *Davis, supra* at 2276. Because all statements by the victim

---

[4] See *Massachusetts v Tang*, 66 Mass App Ct 53, 59; 845 NE2d 407 (2006) ("Emergency questioning designed to secure a volatile scene or provide medical care, however, is not related to the investigation of a crime and does not constitute interrogation.") (Citations and internal quotations omitted). Cf. *People v Geno*, 261 Mich App 624, 631; 683 NW2d 687 (2004) (holding that a statement made to a director at a children's center after an alleged sexual assault occurred "did not constitute testimonial evidence under *Crawford* . . . .").

were necessary to resolving the ongoing emergency, the statements were nontestimonial. *Id.*

Defendant next argues that the Confrontation Clause barred admission of the victim's statements to the detective and the 911 supervisor's testimony concerning the victim's statements to Ferris. We disagree.

Defendant argues at length that his oral request at trial for a "continuing objection to the hearsay . . . statements of the complaining witness" preserved his challenge to the victim's statements to the detective and the 911 supervisor. However, after reviewing the text of defendant's objection, it is clear that defendant was referring to the statements that he challenged in his motion in limine, which the trial court ruled were admissible under the excited-utterance exception to the hearsay rule. Defendant's motion in limine challenged only the victim's statements to Ferris and Avery. Because the admissibility of the statements of the 911 supervisor or the detective was never challenged before the trial court, this issue is not preserved. *People v Grant*, 445 Mich 535, 546; 520 NW2d 123 (1994).

An appellate court will not reverse a conviction on the basis of an unpreserved issue except for plain error that affected a defendant's substantial rights by resulting in the conviction of an actually innocent person or seriously affecting the integrity, fairness, or public reputation of the judicial proceedings. *People v Carines*, 460 Mich 750, 761, 764-767; 597 NW2d 130 (1999).

Defendant's argument about the testimony of the 911 supervisor[5] must fail. The 911 supervisor did not

---

[5] Defendant's brief is somewhat confusing inasmuch as he refers to the testimony of the 911 operator. However, only the supervisor who authenticated a recording of the 911 calls testified and she did not testify about the content of the tapes.

answer either call, although she made the tape that was played in court from the originals and authenticated both the tape and the transcript made from it. Under these circumstances, the only conduct of law enforcement to be considered under *Davis, supra* at 2274 n 2 (which defendant cites) would be her action in making a tape for trial from the originals. Even though *Davis* held that a caller's responses to a 911 operator could be considered testimonial under certain circumstances, it is inapplicable here because the victim's statements were nontestimonial, as noted.

We also conclude that defendant declined to object to the victim's statements to the detective as a matter of trial strategy. Counsel for defendant argued in his opening statement that the evidence would show that the victim did not initially complain to police that she had been raped and that she only did so after being questioned by the friend. It does not appear that defendant could have shown this discrepancy without the hearsay testimony of the detective regarding what the victim told him, which likely explains why defendant still did not object after the trial court indicated that the excited utterance exception might not apply to the victim's statements to the detective. Thus, even assuming that the trial court should have ruled these statements inadmissible despite defendant's failure to object, any alleged error cannot be an error requiring reversal. See *People v Griffin*, 235 Mich App 27, 46; 597 NW2d 176 (1999) (holding that "error requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence . . . . ").

In any event, assuming that the trial court erred in "admitting" the unchallenged testimony of the 911 supervisor or the detective regarding the victim's statements, any such error would not amount to plain error

affecting defendant's substantial rights. *People v Jones,* 468 Mich 345, 355-356; 662 NW2d 376 (2003). Considering the DNA evidence linking defendant to the alleged rape, his testimony that he did not have sex with the victim, and the admissible statements by the victim to Ferris and Avery that she had been raped, defendant has not shown that this cumulative evidence resulted in the conviction of an actually innocent person or undermined the integrity of the judicial system, *id.* at 355-356, so reversal is not warranted.

Defendant next argues that he was denied the effective assistance of trial counsel when counsel failed to argue that the prosecution had not provided adequate independent evidence that the startling event actually occurred. We disagree.

Because no *Ginther* hearing was held, *People v Ginther*, 390 Mich 436, 442-443; 212 NW2d 922 (1973), review is limited to errors apparent on the record. *People v Riley (After Remand)*, 468 Mich 135, 139; 659 NW2d 611 (2003). "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Findings on questions of fact are reviewed for clear error, while rulings on questions of constitutional law are reviewed de novo. *Id.*

To establish a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient in that it fell below an objective standard of professional reasonableness, and that it is reasonably probable that, but for counsel's ineffective assistance, the result of the proceeding would have been different. *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001). "[D]efendant must overcome a strong presumption that counsel's performance consti-

tuted sound trial strategy." *Riley, supra* at 140. "MRE 803(2) provides an exception to the hearsay rule for a 'statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.' " *People v McLaughlin*, 258 Mich App 635, 659; 672 NW2d 860 (2003). Our Supreme Court held in *People v Burton*, 433 Mich 268, 294-295; 445 NW2d 133 (1989), that a party seeking to admit hearsay statements under the excited utterance exception cannot merely rely on the purported excited utterance itself to prove that the startling event occurred. Instead, the proponent must present independent direct or circumstantial evidence establishing by a preponderance of the evidence that the startling event actually occurred. *Id.*

We find that it would have been futile for trial counsel to argue that there was not sufficient independent evidence to show that a startling event actually occurred. The prosecution presented eyewitness testimony that bars had been removed from a window in the victim's apartment and the window had been torn out, at least two witnesses testified that the victim's lip had been injured, and defendant's semen was recovered from a vaginal swab of the victim and from her clothing.

Defendant next argues that defense counsel's failure to object to the incorrect jury instruction on unarmed robbery denied him the effective assistance of counsel. We disagree.

Our Supreme Court held in *People v Randolph*, 466 Mich 532, 550; 648 NW2d 164 (2002), that the pre-amendment version of MCL 750.530 required that "[t]he force, violence or putting in fear must be used before or contemporaneous with the taking" and re-

jected the argument that the force[6] could occur only in the flight, or retention of the property once taken.[7] Thus, because the instructions provided that the necessary force could occur in the course of committing the larceny, including the "attempt . . . , flight, . . . or attempt to retain the property or money[,]" the instructions were incorrect.

However, assuming that defense counsel's failure to object "fell below an objective standard of professional reasonableness[,]" there is no reasonable probability that objecting would have made a difference. *Rodgers, supra* at 714. The exact sequence of events in the apartment was never clearly established, but it is unlikely that the jury could have found that any force occurred *only after* the larcenies (of the victim's television and money) were complete. It is far more likely that the jury inferred that the assault preceded the theft of the television, at least. That is, the evidence could support a finding that a larceny was committed by defendant using the necessary force, the evidence could not support a finding that defendant used force, frightened the victim, or assaulted her only after completing a larceny, which occurred in *Randolph, supra* at 534-535. It would be patently unreasonable for a rational jury to conclude that defendant pocketed a 19-inch television and then sexually assaulted the victim, so he

---

[6] For brevity, we use the term "force" broadly to mean "force and violence, or . . . assault or putting [a present person] in fear" within the meaning of MCL 750.530, and we use the term "larceny" to mean "rob, steal and take [property] from the person of another, or in his presence . . . ."

[7] In contrast, the current version of MCL 750.530 provides that the necessary force may occur " 'in the course of committing a larceny[,]' [which] includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property."

would necessarily have used force that put her in fear for her safety before taking the television.

Moreover, the victim's 911 call clearly demonstrated her fear even before defendant gained entry into her apartment and defendant conceded during the hearing on his motion for a new trial that the noise of the break-in would have immediately frightened the victim. The victim also told the detective that she gave defendant money after he broke in and demanded money, and there is no indication or argument that the victim would have willingly handed over money had she not been afraid. Accordingly, because there is simply no evidence that would support a finding that defendant only frightened or used force in an attempt to commit larceny or to escape or retain the property, it is overwhelmingly likely that the jury found that defendant accomplished a larceny by force or placing the victim in fear, so the error in the jury instruction was harmless.

Affirmed.