# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ROBERT EARL GEE,

        Defendant-Appellant.

UNPUBLISHED
March 14, 2017

No. 326634
Muskegon Circuit Court
LC No. 14-065139-FC

Before: STEPHENS, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of his right his bench trial conviction of first-degree murder, MCL 750.316(1), felon in possession of a firearm (felon-in-possession), MCL 750.224f, and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to life imprisonment for the first-degree murder conviction, 1 to 10 years' imprisonment for the felon-in-possession conviction, and two years' imprisonment for the felony-firearm convictions. We affirm.

This case arises out of the shooting death of Jacob Marc Rameau in the early morning of June 26, 2014, in Muskegon Heights. Rameau was shot while pursuing a stolen vehicle that belonged to his brother, Christopher Hotz. Rameau and Hotz had been socializing at DJ's Pub and emerged from the bar shortly after 1:00 a.m. to witness Hotz's 1991 Dodge Dynasty being driven away unlawfully. Rameau pursued the stolen car on his motorcycle.

According to testimony at trial, the car was driven away by Dashawn Boylan, who had been at DJ's Pub with defendant and three other friends. The five men had arrived at the pub in a car driven by Harry McBride. After Boylan drove away in Hotz's car, defendant, McBride, and the other two friends left the bar in the car driven by McBride and attempted to follow Boylan. They eventually caught up with the stolen car, which had stopped by the side of the road. Rameau had stopped his motorcycle near the stolen car. Defendant pulled a handgun from his clothing and, from the passenger side of the car driven by McBride, shot at Rameau four times through the open passenger window. Rameau then sped away on his motorcycle. The men in the car driven by McBride followed the motorcycle, and as they were pursuing Rameau defendant again pointed the gun out of the passenger window and shot three more times at

-1-

Rameau. According to the testimony of the other passengers in the McBride car, only defendant fired shots; neither Boylan nor any of the other men fired any shots.

Shortly after defendant fired the second round of shots at Rameau, the car driven by McBride caught up with the stolen car driven by Boylan and both cars stopped. Boylan and defendant removed stereo speakers from the trunk of the stolen car and put them in the trunk of the car driven by McBride. All of the men then left in the car driven by McBride, leaving the stolen car abandoned by the side of the road.

A few minutes later at approximately 1:55 a.m., police responding to a call about two or three blocks from where the shooting occurred found Rameau lying in a yard in front of a house about 20 feet from his motorcycle. Moments after police arrived, Rameau died as the result of a gunshot wound.

The next morning, defendant went to McBride's house and retrieved the stereo speakers that he and Boylan had taken from the stolen car. McBride testified that defendant told him that Rameau had died and asked McBride not to tell anyone about the incident. Later that day, defendant sold the speakers to a pawn shop, using a woman in the store to act as intermediary in the sale. The pawn shop employee conducting the transaction testified that he gave the woman a card commemorating the details of the transaction, then gave the money for the speakers to defendant and saw defendant put the money in his pocket. A video recording from the pawn shop shows defendant entering the shop with the speakers and being handed something by the employee. Police later searching the home of defendant's mother, where defendant was living, found a business card from the pawn shop with the details of the speaker transaction in defendant's bedroom.

While police were searching the home, defendant's mother told police that she owned two handguns and that they were located on the top shelf of her closet. Officers did not find any guns in that location, but instead found an empty green gun case lying open in defendant's bedroom. Police later found defendant's father in possession of the green gun case. In the case was one of the handguns registered to defendant's mother. The barrel of the gun had been removed, and neither defendant's mother nor his father had an explanation for the missing barrel. The police forensics examiner later testified that the gun found in the green gun case in the possession of defendant's father was the gun that had ejected six of the seven shell casings found by police in the area where defendant was reported to have shot at Rameau.

Defendant was charged with first-degree murder, felon-in-possession, and felony firearm. At trial, McBride and the other two passengers in the McBride car testified that defendant shot at Rameau numerous times that night. One of the passengers testified that the gun defendant fired was an army green Smith & Wesson; that witness testified that he recognized the gun as belonging to defendant's mother, and that he had known defendant to carry the gun and refer to the gun by the nickname of "Smitty." Another of the passengers in the McBride car testified that the gun was silver in color, and that a few days later he again saw defendant with a silver gun and that defendant removed the barrel from the gun and wrapped the barrel in tissue paper.

Before trial, defendant appeared before the trial court and waived his right to a jury trial and elected to be tried by a judge. At the conclusion of the testimony by both parties, defendant

also waived his right to testify, stating on the record that he understood his constitutional rights and was choosing not to testify. At the conclusion of the bench trial, the trial court found defendant guilty of all charges.

Defendant thereafter moved for a new trial or, in the alternative, a *Ginther*[1] hearing, contending that defendant had not received effective assistance of counsel at trial. Defendant argued that defense counsel at trial had been ineffective because, among other reasons, he had (1) permitted defendant to waive his right to a jury trial when defendant mistakenly believed that the prosecutor had the ability to select a jury of only white jurors, and that (2) he had failed to advise defendant that if he waived his right to testify certain information would not be presented at trial. In response to defendant's motion, the trial court held a *Ginther* hearing to ascertain whether defendant had been denied effective assistance of counsel at trial. At the conclusion of the hearing, the trial court determined that defendant had not been denied effective assistance of counsel at trial and therefore denied defendant's motion for a new trial.

On appeal, defendant first argues that he was denied effective assistance of counsel because defense counsel misled him into waiving his right to a jury trial. We disagree.

A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). Similarly, the adequacy of a jury trial waiver also is a mixed question of fact and law. *People v Cook*, 285 Mich App 420, 422; 776 NW2d 164 (2009). We review a trial court's findings of fact for clear error, while we review constitutional questions de novo. *Jordan*, 275 Mich App at 667.

Both the United States and Michigan Constitutions guarantee a criminal defendant the right to the effective assistance of counsel. *People v Kammeraad*, 307 Mich App 98, 122; 858 NW2d 490 (2014), citing US Const, Am VI; Const 1963, art 1, § 20. To prevail on a claim that counsel was ineffective, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and that (2) but for counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012), citing *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). The defendant bears the burden of establishing the factual predicate of an ineffective assistance claim, *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001), and we presume that defense counsel rendered effective assistance and exercised reasonable professional judgment in all significant decisions. *Vaughn*, 491 Mich at 670.

A criminal defendant also has a constitutional right to a trial by jury. *Cook*, 285 Mich App at 422. Though a defendant may waive his right to a jury trial, the waiver must be both knowing and voluntary to be valid. MCR 6.401; *Cook*, 285 Mich App at 422. In this case, defendant does not argue that the trial court failed to comply with the requirements of MCR

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

6.402(B).[2]  Instead, defendant argues that his waiver was not knowing and voluntary because his attorney failed to dispel defendant's incorrect notion that the prosecutor could eliminate all non-white prospective jurors from the jury.

In this case, the record supports the trial court's conclusion that defense counsel was not ineffective in this regard.  At the *Ginther* hearing, defense counsel testified that in the months leading up to trial he explained to defendant the pros and cons of defendant having a bench trial as opposed to a jury trial.  There is no indication in the record that defense counsel knew that defendant held the mistaken belief that the prosecutor could exclude all non-white jurors.  The record reflects that defendant was questioned by the lower court at the jury waiver hearing, and this mistaken belief, which defendant now asserts he held, is not apparent:

> *Trial court*:    [Defendant], I understand that you wish to have a trial without a jury . . . is that correct?
>
> *Defendant*:    Yes sir.
>
> *Trial court*:    All right.  Under the constitution of both the United States as well as the State of Michigan you are entitled to have a trial by jury or a trial by a judge and you've elected to have a [bench trial] and therefore you will be giving up your constitutional right to a trial by jury.  Do you understand that?
>
> *Defendant*:    Yes sir.

Further, evidence presented at the *Ginther* hearing demonstrated that defendant told his brother during a visitation in jail that it was defendant's own decision to have a bench trial.  Thus, the record does not support defendant's contention that defense counsel at trial failed to properly advise him regarding waiving his right to a jury trial.  Because the record indicates that defendant knowingly, voluntarily, and intelligently waived his right to a jury trial, defendant has failed to show that defense counsel's performance fell below an objective standard of reasonableness in this regard.

In addition, defendant has failed to show that absent defense counsel's alleged failure to explain the jury selection process, the result of his trial would have been different.  *Vaughn*, 491 Mich at 669.  At trial, three witnesses testified that they saw defendant shoot at Rameau numerous times.  Spent shell casings discovered near the scene had been cycled through a gun registered to defendant's mother and defendant's father gave that gun to police in a gun case that police had earlier seen in defendant's bedroom.  One witness testified that he had seen defendant frequently carry a gun owned by defendant's mother and that defendant had nicknamed it

---

[2] MCR 6.402(B) states that "[b]efore accepting a waiver, the court must advise the defendant in open court of the constitutional right to trial by jury.  The court must also ascertain, by addressing the defendant personally, that the defendant understands the right and that the defendant voluntarily chooses to give up that right and to be tried by the court.  A verbatim record must be made of the waiver proceeding."

"Smitty." Surveillance video shows defendant pawning the speakers taken from the stolen car. In light of the ample evidence of guilt presented at trial, defendant cannot establish that absent defense counsel's alleged failure to properly explain the jury selection process, the outcome of his trial would have been different. Therefore, the trial court properly concluded that defendant was not denied effective assistance of counsel in this regard, and was not entitled to a new trial.

Defendant also argues that he was denied effective assistance of counsel because defense counsel should have advised him to testify, given that defendant was the only one who could testify that he was not the shooter. Again, we disagree.

A criminal defendant has the constitutional right to testify in his own defense. *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). Although defense counsel is required to advise a defendant of his or her right to testify, the defendant has the ultimate decision to either testify at trial or not. *Id*.

In this case, defendant testified at the *Ginther* hearing that he was not the shooter and had gotten out of the McBride car before the shooting occurred. Defendant argues that because he was the only person who could testify to this, defense counsel was ineffective in failing to call him as a witness. Defendant conceded, however, that he never shared this information with his trial counsel. Defense counsel therefore cannot have been ineffective for failing to present a defense of which he was unaware. Although defendant claimed that defense counsel never asked for his version of the events, defendant agreed that he had met with defense counsel more than a dozen times before trial. Defendant therefore had ample opportunity to share this information with defense counsel.

In addition, defense counsel testified at the *Ginther* hearing that defendant told him before trial that he did not want to testify, and that defense counsel advised defendant to wait and see how the trial progressed before making that decision. At the conclusion of the witness testimony at trial, defendant stated unequivocally on the record that it was his decision not to testify:

> *Trial counsel*: [Defendant], you understand you have a constitutional right to not testify and if you exercise that right that cannot be held, then used against that -
>
> *Defendant*: Yes.
>
> *Trial counsel*: - you understand that?
>
> *Defendant*: Yes, sir.
>
> *Trial counsel*: And [in] this particular case, ah, you reviewed the facts [and] you're electing not to testify in this particular case and you're standing on your constitutional right to remain silent and let the prosecution [prove your guilt] beyond a reasonable doubt.
>
> *Defendant*: Yes, sir.

*Trial counsel*:   OK.

*Trial court*:   All right.   Thanks.   [Defendant], you and [your trial counsel] have talked about this probably a number of times haven't ya?

*Defendant*:   Yes, sir.

*Trial court*:   And has he answered your questions about this?

*Defendant*:   Yes.

*Trial court*:   Has he given you his advice about what would be the better way to go?

*Defendant*:   Nah, he never really stated any advice about it.

*Trial court*    He said it was your call?

*Defendant*:   Yes

*Trial court*:   Ok.

*Defendant*:   Right.   Correct.

*Trial Court*:   And it's your decision to do it this way?

*Defendant*:   Yes, sir.

Given that defendant did not tell defense counsel of his theory of defense nor of his wish to testify, defendant has failed to establish the requisite factual predicate to assert that defense counsel was inadequate when he failed to call defendant as a witness to present testimony on that theory.   Further, in light of the ample evidence of guilt presented at trial, defendant cannot establish that the outcome of his trial would have been different had he testified that he exited the car before the shooting occurred.   Defendant therefore was not denied effective assistance of counsel in this regard, and was not entitled to a new trial.

We similarly reject defendant's argument that defense counsel was ineffective for offering a flawed defense.   During closing argument, defense counsel argued that the three witnesses who testified that defendant shot at Rameau were not credible because all three had incentive to falsely accuse defendant to save themselves from prosecution.   Defense counsel alternatively argued that even if defendant had fired the gun, the prosecution's theory concerning the shooting had not been proven because it had not been demonstrated that defendant could have hit Rameau given the distance and circumstances of the shooting.   Defendant argues that this is a flawed argument because under this alternative scenario, defendant would have been guilty of felony murder.   A review of the closing argument, however, indicates that defense counsel offered this alternative theory to attempt to persuade the trial court that the prosecution had not proven its case beyond reasonable doubt and also to argue that the conduct did not rise to the level of intent necessary for first-degree murder.   We therefore conclude that defendant has

not established that defense counsel's performance fell below an objective standard of reasonableness, nor that the outcome of the trial would have been different absent the conduct in question. *Vaughn*, 491 Mich at 669.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola