*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

In re JDM, Minor.

UNPUBLISHED
March 14, 2024

No. 366475
Osceola Circuit Court
Family Division
LC No. 23-005903-NA

Before: SWARTZLE, P.J., and REDFORD and YATES, JJ.

PER CURIAM.

Respondent's biological child was removed from her care after petitioner received a video that showed respondent holding the child's head underwater in a bathtub. The trial court terminated respondent's parental rights to the child. We affirm.

## I. BACKGROUND

Respondent was awarded primary physical custody of the child during a divorce from the child's biological father. The father then reported a video to the police that showed respondent holding the child's head underwater, in a bathtub, while the child cried and tried to resist being drowned. Petitioner moved to terminate respondent's parental rights to the child on the basis of the video. Because petitioner moved to terminate respondent's parental rights immediately, given the nature of the acts captured in the video, there was no requirement for petitioner to offer respondent services to rectify her barriers to reunification. Petitioner did recommend that respondent undergo a psychological evaluation as well as avail herself to counseling services and parenting classes.

Respondent appeared remotely for her preliminary and pretrial hearings, at which the trial court noted that respondent was not willing to enter a voluntary plea of no contest to the petition. The trial court instructed respondent that there would be a jury trial regarding adjudication of the petition and that she would need to attend the trial in person. Respondent did not appear for the jury trial, however, and respondent's counsel again requested that respondent be allowed to appear remotely. The trial court denied that request, and it stated that respondent's remote appearance would not be appropriate.

-1-

At the trial, the father testified that the voice in the aforementioned video belonged to respondent, he recognized the bathroom and bathtub in which the child's head was being held underwater, and he received the video in a text message from respondent. Respondent's counsel stated that she understood that the video was going to be admitted into evidence, and she asked to review the text messages that accompanied the video. Respondent's counsel further argued that the petition was improper. Petitioner then confirmed that the video was still on the father's phone, and respondent's counsel stipulated to the admission of the video, which was then played twice for the jury. The father also testified that, on one occasion while he was living with respondent and the child, he heard the child screaming and observed respondent "rubbing soap into his eyes."

It was reported that respondent completed the psychological evaluation as recommended by petitioner, but she did not engage with counseling or parenting classes. The trial court admonished petitioner's attorney, outside the presence of the jury, for asking about respondent's compliance with services because that compliance was irrelevant given that it was "a termination petition." The trial court explained that it was not improper to ask whether respondent would participate in services, but rather it was improper to insinuate that doing so was "what's being requested." During closing arguments, petitioner asserted that "I'm not saying [respondent is] a terrible person," but "[a]nyone who sticks a [two-year-old's] head under water, needs some help." Further, petitioner stated that it was "the one that gives you the help," and petitioner told respondent, "[T]his is what we think you need. And you better embrace it if you want your kid."

The trial court instructed the jury that it could adjudicate respondent if it found that respondent failed to provide necessary care for the child, that the child was subject to substantial risk of harm, or if the child's home or environment was unfit because of respondent's depravity. The jury found that the two latter grounds were established.

The trial court then held a dispositional hearing on whether to terminate respondent's parental rights to the child, during which the trial court took notice of the evidence, including the video, that was introduced at the adjudication trial. The father then testified that, while he was married to her, respondent would often send him text messages that she was abusing the child. The father read some of the messages into the record, including, "You really like having your son get beat all day," and, "I'm putting...welts on him today." Additionally, it was reported that respondent mostly refused petitioner's suggestions on how she could demonstrate that she was not a threat to the child.

The trial court terminated respondent's parental rights to the child under MCL 712A.19b(3)(b)(*i*), MCL 712A.19b(3)(j), and MCL 712A.19b(k)(*iii*). The video demonstrated respondent committing physical abuse against the child that was so severe that it indicated that the child would likely suffer additional injury or abuse if returned to respondent's care. Regarding the best interests of the child, the trial court held that, even though there was a bond between respondent and the child, the video reflected respondent's "depraved ability to provide appropriate love and affection." Further, because respondent had sent messages to the father indicating that she abused the child in retaliation for the father's actions, respondent demonstrated "some depraved moral understanding or ability." The trial court considered alternatives to the termination of respondent's parental rights, but held that those were inappropriate because the child needed "to be free from the possibility of [respondent] coming back into his life," and those alternatives would remove him from the stable environment he enjoyed with his father.

Respondent now appeals.

## II. ANALYSIS

### A. STATUTORY GROUNDS

Respondent argues that there was not clear and convincing evidence to establish a statutory ground for the termination of her parental rights. This Court reviews for clear error a trial court's determination that at least one statutory ground for termination was proven by clear and convincing evidence. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (cleaned up).

The trial court terminated respondent's parental rights to the child, in part, under MCL 712A.19b(3)(b)(*i*). Termination of parental rights is proper under this statute if "[t]he child or a sibling of the child has suffered physical injury *or* physical or sexual abuse" under circumstances where "[t]he parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home." MCL 712A.19b(3)(b)(*i*) (emphasis added).

The aforementioned video depicted respondent holding the child's head underwater on more than one occasion, and this constituted direct evidence of respondent abusing the child. Further, the evidence demonstrated that respondent would often text the father and admit that she was abusing the child. The trial court noted that respondent failed to acknowledge the severity of her conduct, which indicates that the child would likely be harmed if returned to her care, and respondent did not engage in any recommendation to help her understand and rectify the danger she posed to the child's well-being.

Thus, we are not left with a definite and firm conviction that the trial court made a mistake when finding that the termination of respondent's parental rights to the child was demonstrated by clear and convincing evidence under MCL 712A.19b(3)(b)(*i*). Because one statutory ground for termination is established, "we need not consider whether the other grounds cited by the trial court also supported the termination decision." *In re Foster*, 285 Mich App 630, 633; 776 NW2d 415 (2009).

### B. BEST INTERESTS

Next, respondent argues that the trial court erred by finding that the termination of her parental rights was in the child's best interest. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App at 40. "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App at 90. The trial court's ruling regarding best interests is reviewed for clear error. *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016).

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). With respect to the

children's best interests, this Court places its focus on the children rather than the parent. *In re Moss*, 301 Mich App at 87. "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App at 41-42 (cleaned up). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714.

In this case, the trial court noted that father had provided stability for the child, and, even though respondent likely had a bond with the child, her testimony demonstrated that she did not take responsibility for the abuse that she inflicted on the child. Even though respondent argues that the termination of her parental rights was not in the best interest of the child because the father was also unfit to parent the child, a parent is presumed to be fit until the parent is adjudicated. *In re Deng*, 314 Mich App 615, 627; 887 NW2d 445 (2016).

Given that the child was in a stable environment with the father, and respondent did not demonstrate any ability to parent the child appropriately, we are not left with a definite and firm conviction that the trial court made a mistake. Therefore, the record supports that the trial court did not clearly err when it found by a preponderance of evidence that termination of respondent's parental rights was in the child's best interests.

## C. ALLEGED INEFFECTIVE ASSISTANCE OF COUNSEL

Lastly, respondent argues that her counsel was ineffective because her counsel did not seek to have her appear at the adjudication trial remotely, failed to exclude the video from being admitted, and failed to seek a mistrial on the basis of references to her nonparticipation in services.

"[T]he principles of effective assistance of counsel developed in the context of criminal law apply by analogy in child protective proceedings." *In re CR*, 250 Mich App 185, 197-198; 646 NW2d 506 (2002), overruled on other grounds *In re Sanders*, 495 Mich 394; 852 NW2d 524 (2014). Respondent did not move for a new trial or an evidentiary hearing and, thus, review of her claim of ineffective assistance of counsel is limited to "mistakes apparent on the record." *In re LT*, 342 Mich App 126, 133; 992 NW2d 903 (2022).

To establish a claim of ineffective assistance of counsel, respondent must show that: (1) respondent's counsel's performance was deficient; and (2) the deficient performance prejudiced respondent. See *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007). Respondent's counsel's performance is deficient if it fell below an objective standard of professional reasonableness. See *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). Respondent bears a heavy burden to show that counsel made errors so serious that counsel was not performing as guaranteed by the Sixth Amendment, and respondent must overcome a strong presumption that counsel's performance constituted sound trial strategy. See *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001), citing *Strickland v Washington*, 466 US 668, 104 S Ct 2052, 80 L Ed 2d 674 (1984); *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). The performance will be deemed to have prejudiced respondent if it is reasonably probable

that, but for counsel's error, the result of the proceeding would have been different. See *Jordan*, 275 Mich App at 667.

First, respondent ignores that her counsel did request that she be able to appear for the trial remotely. Thus, respondent's argument is misplaced, and there is no apparent error on the record, because her counsel did preserve her request to appear remotely. The trial court denied that request.

Next, respondent argues that her counsel's performance was deficient for failing to have the video excluded. Specifically, respondent argues that the video was not properly authenticated under MRE 901 and the father did not have personal knowledge of when the video was taken, or whether it was modified, contrary to MRE 602.[1] At the time of the adjudication trial, MRE 602 provided, in relevant part, that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter," and MRE 901(a) provided, in relevant part, that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

In this case, the father testified that he recognized respondent's voice in the video, he recognized the child in the video, and he recognized the bathroom in the video. Furthermore, he testified that respondent sent him the video. Thus, the father had personal knowledge of the matter, the video showed the abuse as petitioner claimed, and the father's testimony provided the proper foundation to introduce the video under both MRE 602 and MRE 901. Any objection to the admissibility of the video would have been futile, and counsel is not ineffective for failing to make a futile motion. See *People v Henry (After Remand)*, 305 Mich App 127, 141; 854 NW2d 114 (2014).

Lastly, respondent argues that her counsel was ineffective for failing to object to petitioner's insinuation that she did not participate in services since no services were offered. Respondent ignores, however, that it was not asserted that her participation in services was a formal requirement or that lack of her participation was a ground for termination. Instead, the fact that respondent elected not to participate in any recommendations from petitioner was used to argue that she would remain a threat to the child's well-being. Further, petitioner's closing argument did not specify that petitioner failed to engage in services, but rather that petitioner thought respondent could benefit from some help.

Even though respondent makes a colorable argument that her counsel could have objected to petitioner's mention of services or recommendations, the trial court had already admonished petitioner for the statements and counsel is not ineffective for failing to make a redundant objection. *Id.* Further, respondent's counsel was arguing that the petition was filed improperly because the video was, allegedly, submitted by the father in retaliation after he lost physical custody of the child during the divorce proceedings. Thus, counsel's strategy was to challenge the validity of the proceedings instead of challenging the process that led to those proceedings.

---

[1] Our Supreme Court revised the Michigan Rules of Evidence effective January 1, 2024. We cite the version of the rules that was in effect at the time of respondent's trial.

Counsel's strategy is not ineffective simply for the fact that is was unsuccessful, *People v White*, 331 Mich App 144, 149; 951 NW2d 106 (2020), and respondent has not overcome the presumption that counsel's decision, to not challenge petitioner's statements, was strategic. Lastly, there is no indication that the outcome of the trial would have been different but-for counsel's alleged ineffectiveness given that the trial court instructed the jury to make a decision on whether respondent abused the child, and the overwhelming evidence substantiated that respondent did abuse the child. See *Jordan*, 275 Mich App at 667.

### III. CONCLUSION

The evidence demonstrated that respondent egregiously abused the child, and her unwillingness to take serious responsibility for her actions demonstrated that the termination of her parental rights was in the child's best interest. Further, respondent has not demonstrated that her counsel was ineffective because her counsel did request her remote participation at the trial, the father's testimony provided proper foundation for the admission of the video, and any discussion of respondent's alleged nonparticipation in petitioner's recommendations did not prejudice respondent given the overwhelming evidence of abuse.

Affirmed.

/s/ Brock A. Swartzle
/s/ James Robert Redford
/s/ Christopher P. Yates