*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JIMMIE DOYLE KILGORE, JR.,

Defendant-Appellant.

FOR PUBLICATION
October 16, 2024
10:25 AM
No. 365881
Kent Circuit Court
LC No. 21-008959-FC

Before: SWARTZLE, P.J., and REDFORD and FEENEY, JJ.

SWARTZLE, P.J.

In many ways, defendant received exemplary representation by his lawyer during his criminal trial. A jury acquitted defendant of first- and second-degree murder, easily the most serious of the crimes of which defendant was charged. The jury convicted defendant of carrying a concealed weapon (CCW), likely because his lawyer conceded that argument during closing—and this strategic concession may well have garnered the defense vital credibility on the more serious murder charges. Defense counsel focused his time and effort on defending against the murder charges, and, as a result of the acquittals, defendant avoided spending decades of his life in prison.

Even so, "a single, serious error may support a claim of ineffective assistance of counsel." *In re Casto*, 344 Mich App 590, 623; 2 NW3d 102 (2022) (citation omitted). Defense counsel failed to ask the trial court to instruct the jury on self-defense and defense-of-others with respect to the charge of felony-firearm. Given that there was no strategic reason not to ask for the instruction, and given that the jury returned inconsistent verdicts on the murder charges (not guilty) and the felony-firearm charge predicated on murder (guilty), we conclude that there is a reasonable probability that, but for counsel's error, the result of the trial would have been different as to that conviction. For this reason, as well as several sentencing errors, we vacate defendant's conviction and sentence for felony-firearm and his sentence for CCW and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

-1-

Evidence at trial showed the following: Kawana White was in a relationship with Jonathon Williams beginning in January 2021. Several months later, White also began to date defendant, and, according to White, Williams "would not let [her] break it off with him." On July 4, 2021, White told Williams that she was going to be in an exclusive relationship with defendant and that Williams must stop contacting her. Williams ignored her request; instead, over the following days, he repeatedly called and messaged her, threatening her and her children.

For example, the day after White told Williams to stop contacting her, he texted her, "it's about to get real ugly tonight." Then, two days later, Williams broke into White's residence while she and defendant were in bed. Williams slapped White, and he left only after he saw defendant with a gun. Williams then went outside, lingering near the house and repeatedly shouting, "I'm going to kill you!"

White called the police, and a Grand Rapids Police Officer responded. White explained to the jury that she went to the courthouse the next day "as soon as they opened" and obtained a personal protection order (PPO) against Williams. As stated in the PPO petition, White was receiving over 100 phone calls and text messages a day from Williams, he had entered her home without permission multiple times, and she was in fear for her life and her children's lives.

On the same day that White obtained the PPO, Williams followed her to her extended family's house and was "screaming and hollering at [her]." Later that same day, Williams texted her, "I'm in your bed. Thanks for leaving the door unlocked. About to watch a movie." Williams texted her again to say that he was "about to jack off, then leave." When White returned home, she found her bedsheets covered in semen.

The next day, Williams again followed White to her family's house. He blocked her vehicle with his and got out. White locked her doors, and Williams pounded on her window. Williams then retrieved an item from his truck, possibly a hitch or crowbar, but he fled the scene when he saw White's cousin approaching. White emailed a detective about the encounter. Although Williams had not yet been served with the PPO, the detective instructed Williams not to contact White. Evidence showed that defendant was aware of most, if not all, of Williams' aggressive actions and messages directed at White.

Later that night, White and defendant were driving in defendant's vehicle, and they passed Williams driving along the same street. Williams immediately performed a U-turn and followed White and defendant. White was "petrified." At some point, White thought that she heard gunshots.

After driving a bit, defendant parked his vehicle, exited, and shot at Williams' vehicle as it approached them. Williams was struck, and he later died from a gunshot wound. No weapon was found on Williams or in his vehicle. Defendant admitted to detectives that he shot Williams.

As a result of the killing, defendant was charged with open murder, MCL 750.316 and MCL 750.318; felony-firearm predicated on murder, MCL 750.227b; and carry a concealed weapon, MCL 750.227. Defendant took the matter to a trial by jury.

In its opening instructions at trial, the trial court instructed the jury on the elements of each offense, including first-degree premeditated murder; second-degree murder; felony-firearm

-2-

predicated on murder; and CCW. As to the latter two charges, the trial court explained to the jury that the CCW charge required the prosecutor to prove that a pistol was in the vehicle with defendant, defendant knew it was there, and that "defendant took part in carrying or keeping the pistol in the vehicle." The trial court explained that the felony-firearm charge required the prosecutor to prove that defendant committed the crime of murder, although it was not necessary that defendant actually be convicted of murder. Further, the prosecutor had to prove that defendant knowingly carried or possessed a firearm while committing that crime.

Defense counsel subsequently asked the trial court to instruct the jury on self-defense and defense-of-others with respect to the murder charges. The trial court agreed to do so; before closing arguments, the trial court instructed the jury that "defendant claims that he acted in lawful self defense. A person has a right to use force, or even take a life to defend himself under certain circumstances. If a person acts in lawful self defense, that person's actions are justified, and he is not guilty of murder." Next, the trial court instructed the jury on defense of others, explaining, "A person has the right to use force or even take a life to defend someone else under certain circumstances. If a person acts in lawful defense of another, his actions are justified, and he is not guilty of murder." As for CCW, the trial court distinguished that charge from the murder charges: "Self defense is not a defense to carrying a concealed weapon. It does not matter if the defendant was carrying the weapon for his own protection. Self defense is not a defense to this charge." The trial court did not specifically mention felony-firearm during the instructions on self-defense and defense-of-others.

In the closing argument, the prosecutor emphasized both that self-defense was not a defense to CCW, and that the jury could convict defendant of felony-firearm even if the jury did not convict defendant of murder. For his part, defense counsel argued that defendant had an honest-and-reasonable belief that he and White were in danger of death or serious injury, and the jury should, accordingly, find defendant "not guilty on the charges involving homicide." Defense counsel conceded that defendant did not have a concealed-weapons permit and was guilty of CCW.

Following deliberations, the jury acquitted defendant of first- and second-degree murder, but it convicted him of felony-firearm predicated on murder. The jury also found defendant guilty of CCW.

Sentencing on the two convictions followed. Defendant's minimum-sentencing guidelines for his CCW conviction were calculated at zero-to-three months in jail. The trial court explained that a CCW conviction was excluded from consecutive sentencing with a felony-firearm conviction, but, because the felony-firearm charge was related to the murder charge, the trial court believed that consecutive sentencing was permitted. The trial court noted that defendant was 42 years old, with one prior misdemeanor conviction, but no prior felony convictions or incarceration, and that Williams had been stalking defendant and White. The trial court then explained:

> I do not believe the guidelines take into effect that someone was killed here. I—I am not circumventing the jury's verdict on the murder. However, there was an unarmed man that was shot, and there was a shooting, and then the defendant walked up and shot again, using that gun that was being carried concealed, and the guidelines do not take that into effect.

Given this, the trial court sentenced defendant to serve two years in prison for his felony-firearm conviction, and three to five years for his CCW conviction, the sentences to be served consecutively.

Defendant now appeals. Defendant also moved this Court to remand the case to the trial court for an evidentiary hearing on the basis of his claim that trial counsel was ineffective. This Court denied defendant's motion, but we granted his request to add to the record an affidavit from defendant's trial counsel. *People v Kilgore*, unpublished order of the Court of Appeals, entered January 26, 2024 (Docket No. 365881). In his affidavit, counsel explained that his "failure to request a self-defense instruction on the felony firearm charge was not a matter of trial strategy; rather, it was a matter of focusing on the murder charges."

## II. ANALYSIS

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that defense counsel was ineffective for failing to request the self-defense and defense-of-others jury instructions for the offense of felony-firearm. Defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. This right includes the right to the effective assistance of counsel. *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). "Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016).

To establish a claim of ineffective assistance of counsel, defendant must show that: (1) defense counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007). Defense counsel's performance is deficient if it fell below an objective standard of professional reasonableness. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). Defendant bears a heavy burden to show that counsel made errors so serious that counsel was not performing as guaranteed by the Sixth Amendment, and defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001), citing *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Counsel's strategic decisions must, however, be objectively reasonable. *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023). The performance will be deemed to have prejudiced the defense if it is reasonably probable that, but for counsel's error, the result of the proceeding would have been different. *Jordan*, 275 Mich App at 667.

"Trial counsel's failure to request a jury instruction may constitute an unreasonably deficient level of performance." *Yeager*, 511 Mich at 490. A trial court must "instruct the jury concerning the law applicable to the case and fully and fairly present the case to the jury in an understandable manner." *People Goree*, 296 Mich App 293, 301; 819 NW2d 82 (2012) (cleaned up). In *Goree*, 296 Mich App at 302, this Court held that the trial court erred when it instructed the jury that a claim of self-defense was not applicable to a felony-firearm charge. In its holding, this Court partially relied on *People v Dupree*, 486 Mich 693, 696; 788 NW2d 399 (2010), in which our Supreme Court held that common-law self-defense was applicable to a felon-in-

possession charge when the defendant provided evidence that he temporarily possessed a firearm in self-defense.

Here, defense counsel admitted in his affidavit that his failure to request the instructions for felony-firearm was not a strategic choice; rather, he was focused on defending against the murder charges. As noted at the beginning of this opinion, it is understandable that counsel focused on the more serious charges, and it is even understandable that he conceded defendant's guilt on the CCW charge, as that concession likely garnered him credibility with the jury. In losing the CCW battle, defense counsel may have helped defendant gain the victory on the murder charges.

But, even so, defense counsel overlooked the felony-firearm charge. He did not ask for an instruction on self-defense and defense-of-others on that charge, even though defendant was entitled to those instructions. In *People v Leffew*, 508 Mich 625, 646; 975 NW2d 896 (2022), for example, our Supreme Court noted that the "defense attorneys presented evidence and arguments leading the jury to an acquittal under a defense-of-others theory only to deprive jurors of a judge-given map to reach that destination." The Court held that the failure to request the defense-of-others instruction to support their trial strategy was objectively unreasonable. *Id*. Likewise, here, the defense strategy centered around self-defense and defense-of-others, but the jury was not informed that it could consider these defenses when determining defendant's guilt on the felony-firearm charge.

The trial court's instructions specifically connected these defenses to the murder charges, explaining that if defendant acted in lawful self-defense or defense-of-others, he was "not guilty of *murder*." (Emphasis added.) The trial court then explained that these defenses did not apply to CCW. But, left unmentioned was whether these defenses applied to felony-firearm predicated on murder. Instructions on these defenses would have been crucial to the defense on that charge, and defense counsel's failure to request the instructions was objectively unreasonable. See *Leffew*, 508 Mich at 646; *Jordan*, 275 Mich App at 667.

On the second element of ineffective assistance of counsel, we conclude that it is reasonably probable that, but for counsel's error with respect to felony-firearm, the result of the proceeding would have been different. The jury acquitted defendant of murder, but, at the same time, it convicted him of a charge predicated on him having committed a murder. In a practical sense, the jury verdicts were inconsistent. Mere inconsistency alone, of course, is not sufficient to call into question the validity of a conviction. See *People v Putman*, 309 Mich App 240, 251; 870 NW2d 593 (2015). Relatedly, an acquittal on a predicate felony does not invalidate a related felony-firearm conviction. *People v Lewis*, 415 Mich 443, 454-455; 330 NW2d 16 (1982). But, when, as here, there is an error in the jury instructions that appear to (i) provide a defense for the charge on which the jury acquitted but (ii) foreclose the same defense on the related charge on which the jury convicted, the probability that the conviction resulted from jury confusion rather than jury choice is too high to ignore.

The prosecutor suggests that the jury might have inferred that self-defense and defense-of-others applied to the felony-firearm charge because defense counsel discussed the charges in two broad groups, separating the "charges involving homicide" from the CCW charge. Yet, because the jury had *two* murder charges to consider, it is unclear on this record whether defense counsel

meant to group the felony-firearm charge along with the murder charges, or whether defense counsel simply overlooked the felony-firearm charge when discussing the two groups.

Relatedly, we observe that both the CCW charge and the felony-firearm charge involved the possession of a weapon. This Court has recognized that "felony-firearm is a possessory offense," comparing it to the offense of being a felon-in-possession of a firearm. See *Goree*, 296 Mich App at 302. This possessory quality of both charges further supports the view that, when the trial court expressly instructed the jury that the defenses did not apply to CCW and did not mention felony-firearm, the jury might well have understood this to mean that the defenses did not apply to felony-firearm.

Accordingly, for these reasons, we conclude that defendant received ineffective assistance of counsel on his felony-firearm conviction, and this conviction and the associated sentence must be vacated.

We further observe that, if the prosecutor retries defendant on the felony-firearm charge, defendant would be entitled to, at least, common-law self-defense and defense-of-others instructions. The prosecutor acknowledges the existence of M Crim JI 11.34c, which is the specific model instruction for "Felony Firearm-Self-Defense." This instruction provides that a person who was not engaged in the commission of a crime at the time that he used deadly force had the right to use deadly force anywhere that he had the right to be, with no duty to retreat, if he honestly and reasonably believed that the use of deadly force was necessary to prevent imminent death, great bodily harm, or sexual assault of him-or herself or another individual. M Crim JI 11.34c(1).

Here, defense counsel admitted at trial that defendant committed CCW. As already observed, this appears to have been a reasonable concession based not just on the undisputed evidence, but also sound defense strategy of conceding a lesser offense to focus on the more serious ones. See *People v Matuszak*, 263 Mich App 42, 60-61; 687 NW2d 342 (2004). It is also, however, arguable that, once defendant was out of his vehicle and no longer *concealing* the weapon, he was not committing a CCW at that time. It is, therefore, an open question whether defendant would have been entitled to a self-defense instruction in line with the Self-Defense Act (SDA), MCL 780.971 *et seq*.

But in any event, defendant would still be entitled to an instruction under the common-law. The SDA "does not diminish an individual's right to use deadly force or force other than deadly force in self-defense or defense of another individual as provided by the common law of this state in existence on October 1, 2006." MCL 780.974. Instead, with the SDA, "the Legislature codified the circumstances in which a person may use deadly force in self-defense or in defense of another person *without having the duty to retreat*." *Dupree*, 486 Mich at 708 (emphasis added). The SDA did not otherwise "modify or abrogate the common-law defenses of self-defense or defense of others." *Leffew*, 508 Mich at 641.

## B. SENTENCING

Moving next to defendant's sentences, he argues that the trial court was not authorized to impose consecutive sentences. He also argues that the trial court erred by considering acquitted

conduct when imposing an upward-departing sentence on the CCW conviction. Both arguments have merit.

With respect to the consecutive sentences, because defendant's felony-firearm conviction and sentence are hereby vacated, there is nothing now to serve consecutive to the CCW sentence. If defendant is retried and convicted again of felony-firearm, then we merely note that the prosecutor has conceded error on this point because the consecutive aspect of the sentence was not authorized by statute. See *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012).

As to the upward departure on the CCW conviction, we conclude that the trial court erred by considering acquitted conduct when setting the departure sentence. In *People v Beck*, 504 Mich 605, 626; 939 NW2d 213 (2019), our Supreme Court explained that "when a jury has specifically determined that the prosecution has not proven beyond a reasonable doubt that a defendant engaged in certain conduct, the defendant continues to be presumed innocent." A trial court may not, therefore, rely on acquitted conduct when sentencing a defendant. See *id*. at 629; *People v Stokes*, 333 Mich App 304, 310; 963 NW2d 643 (2020).

The trial court explained its upward departure from the sentencing guidelines for CCW because, in its view, the guidelines did not adequately account for Williams' death. A similar situation was faced in *People v Brown*, 339 Mich App 411, 414-415; 984 NW2d 486 (2021), and this Court explained there that, when sentencing a defendant on a firearm-possession charge, the trial court could not consider any evidence related to the victim's death, because the defendant in that case had been acquitted of murder based on a theory of self-defense. Similarly here, defendant was acquitted on charges of first- and second-degree murder based on theories of self-defense and defense-of-others. Moreover, the CCW conviction had no operative facts in common with the acquitted charges because when the death occurred, he was no longer committing CCW; and, even though the felony-firearm conviction *did* have operative facts in common with the acquitted charges, the sentence on that conviction was a fixed amount of imprisonment and, in any event, has now been vacated. Accordingly, under *Beck* and *Brown*, the trial court was precluded from considering any facts associated with Williams' death when sentencing defendant on the CCW conviction, and the departure sentence must similarly be vacated.

III. CONCLUSION

For the reasons explained here, we vacate defendant's conviction and sentence for felony-firearm and vacate his sentence for CCW. We remand for further proceedings consistent with this opinion, and we do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Kathleen A. Feeney