# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

CHAD ALAN STEWART,

      Defendant-Appellant.

UNPUBLISHED
December 20, 2018

No. 339169
Eaton Circuit Court
LC No. 16-020201-FC

---

Before: BOONSTRA, P.J., and JANSEN and GADOLA, JJ.

PER CURIAM.

Defendant was convicted by a jury of two counts of first-degree criminal sexual conduct, MCL 750.520b(2)(b) (victim less than 13 and defendant over 17); one count of producing child sexually abusive material, MCL 750.145c(2); one count of using a computer to commit a crime, MCL 752.797(3)(f); and one count of second-degree criminal sexual conduct, MCL 750.520c(2)(b) (victim less than 13 and defendant over 17). The trial court sentenced defendant as a fourth habitual offender, MCL 769.12, to serve 60 to 90 years in prison for his convictions for first-degree criminal sexual conduct, and to serve concurrent sentences of 25 to 60 years for each of his other convictions. We affirm.

## I. FACTS

This case involves defendant's criminal sexual conduct with his fiancee's two minor daughters. At the times relevant to this case, the girls were ages seven and four. At trial, the children's mother testified that she occasionally had permitted defendant to stay in her home. On one such occasion, defendant arrived at the home intoxicated, and she sent him to another room to "sleep it off." Defendant left his cell phone behind in her bedroom, and she looked through the photos stored on his phone to check for images of other women. She found not only pictures of other women, but also several images "of him putting his penis in my children's mouth and pictures of him pulling their underwear aside and taking pictures of their vaginas." She also discovered videos depicting defendant putting his penis in and out of one child's mouth, another video of him ejaculating in the child's mouth, and another video of him telling the other daughter to come over and "suck on his penis for a few minutes." Although the pictures did not show defendant's face, she testified that she recognized his tattoos, other identifying features on his hands and body, his voice, and his shoes.

-1-

Defendant was charged with first-degree criminal sexual conduct, second-degree criminal sexual conduct, producing child sexually abusive material, and using a computer to commit a crime. Prior to trial, defendant sought and was granted an adjournment for the purpose of defendant undergoing a court-ordered psychiatric evaluation to determine whether he was competent to stand trial and criminally responsible. Based upon the evaluation report, the trial court held that defendant was competent to stand trial.

Defendant thereafter requested and was granted a second adjournment to permit the defense sufficient time to present an expert witness at trial,[1] being a psychologist of the defense's choosing. Shortly before the new trial date, defendant asked for and was granted a third adjournment to enable defendant to undergo another court-ordered competency evaluation. The result of the second court-ordered evaluation indicated that defendant was competent to stand trial and was feigning symptoms of incompetency. The trial court found defendant competent to stand trial based upon the re-evaluation, and scheduled the trial date.

One week before trial, defendant moved for a fourth adjournment, requesting that the trial court order another psychiatric evaluation, this time by an independent evaluator, for the purpose of again determining whether defendant was competent to stand trial and criminally responsible. The trial court denied the motion. On the day of trial, defendant again requested an adjournment for the purpose of another psychiatric examination, and also asked to be permitted to call a witness whom defendant claimed had been omitted from his witness list. Defendant asserted that the witness would be relevant only if the additional psychiatric evaluation were conducted. The trial court again denied the request for adjournment. Defendant was thereafter convicted of the charges, and subsequently was sentenced. Defendant thereafter moved for a new trial, or in the alternative an evidentiary hearing, asserting that he was denied the effective assistance of counsel at trial. The trial court denied defendant's motion. Defendant now appeals to this Court.

II. ANALYSIS

A. DENIAL OF FOURTH MOTION TO ADJOURN

Defendant contends that the trial court violated his constitutional right to present a defense by denying his request for a fourth adjournment. We disagree.

We review a trial court's denial of a motion to adjourn for an abuse of discretion, *People v Daniels*, 311 Mich App 257, 264-265; 874 NW2d 732 (2015), which occurs when the trial court chooses an outcome outside the range of reasonable outcomes, *People v Bass*, 317 Mich App 241, 256; 893 NW2d 140 (2016). We review constitutional issues de novo. *Daniels*, 311 Mich at 265.

To warrant an adjournment, a party must demonstrate both good cause and diligence. *People v Coy*, 258 Mich App 1, 18; 669 NW2d 831 (2003). To determine whether good cause for adjournment was demonstrated, we consider factors such as whether the defendant "(1)

---

[1] Defendant ultimately chose not to introduce the testimony of his expert.

asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments." *Id*. (quotation marks and citation omitted). But even when a party demonstrates good cause and due diligence, we will not reverse a trial court's decision to deny a motion to adjourn unless the party demonstrates prejudice as a result of the trial court's abuse of discretion. *Id*. at 18-19.

In this case, defendant was granted three adjournments prior to trial. Two of the adjournments were granted in conjunction with the trial court granting defendant's requests for court-ordered psychiatric evaluations for the purpose of determining defendant's competency to stand trial and his criminal responsibility. The other adjournment was granted to permit defendant sufficient time to present as an expert witness a psychologist of defendant's choosing. One week before trial, and again on the morning of trial, defendant requested that he be given an additional adjournment to allow him again to obtain an independent psychological evaluation for competency and criminal responsibility, and if necessary, to call as a witness an emergency medical technician who worked at the jail, who defendant suggested would be a relevant witness to his defense if a new psychiatric evaluation were ordered. The trial court denied defendant's motion for the additional adjournment.

Defendant argues that the trial court abused its discretion in denying his request for the fourth adjournment because the lack of an independent psychiatric evaluation and the absence of the witness, whom he would have called if made relevant by the independent psychiatric evaluation, deprived him of a defense. A criminal defendant has a federal and state constitutional right to present a defense. US Const, Ams VI, XIV; Const 1963, art 1 § 13; *People v Hayes*, 421 Mich 271, 278; 364 NW2d 635 (1985). But a defendant's right to present a defense is not unlimited and "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *People v King*, 297 Mich App 465, 473; 824 NW2d 258 (2012), quoting *Chambers v Mississippi*, 410 US 284, 295; 93 S Ct 1038; 35 L Ed 2d 297 (1973).

In this case, defendant was granted three adjournments, two court-ordered psychiatric evaluations, and sufficient time to enable him to present his own expert witness regarding his mental competency. He was twice found competent to stand trial. The Center for Forensic Psychiatry, which conducted the court-ordered evaluation, reported that defendant was not experiencing a genuine serious mental condition, understood the nature and objects of the proceeding against him, was able to assist defense counsel, and was feigning psychological symptoms of incompetency. On the morning of trial, defendant sought still more time to address the same issue, being his desire to present the defense that he was not mentally competent nor criminally responsible, which he had been unable to establish during the previous three adjournments. Although defendant asserted a constitutional right, and although he initially had a legitimate reason for asserting the right, defendant had been granted three adjournments for that purpose. The trial court did not abuse its discretion by denying defendant's request for a fourth adjournment that defendant sought for the same purpose.

B. INEFFECTIVE ASSISTANCE

Defendant next contends that he was denied the effective assistance of counsel because trial counsel failed to provide him with reports, documents, and evidence regarding his case. We disagree that trial counsel in this case was ineffective.

Both the United States and Michigan Constitutions guarantee a criminal defendant the right to the effective assistance of counsel. *People v Kammeraad*, 307 Mich App 98, 122; 858 NW2d 490 (2014). A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). We review the trial court's factual findings for clear error, while reviewing constitutional questions de novo. *Id.*

To prove that defense counsel at trial was ineffective, a defendant must prove that "(1) counsel's performance was deficient, meaning it fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the defendant's trial would have been different." *People v Solloway*, 316 Mich App 174, 188; 891 NW2d 255 (2016). We presume the effective assistance of counsel, and a criminal defendant has a heavy burden of proving otherwise. *People v Schrauben*, 314 Mich App 181, 190; 886 NW2d 173 (2016).

In this case, defendant asserts that trial counsel was ineffective by failing to provide him with reports, documents, and evidence regarding his case. Defendant, however, does not specify what reports, documents, or evidence trial counsel allegedly neglected to share with him, nor does he explain how the alleged deficiency affected the outcome of his trial. Defendant further asserts that trial counsel failed to adequately prepare for trial or to communicate with him prior to trial, and that trial counsel was ineffective for failing to request an independent psychological evaluation until it was too late, thus depriving him of a defense. As discussed, defendant has not shown that he was denied a defense based on the lack of an independent medical evaluation. Trial counsel requested and obtained for defendant two court-ordered psychiatric evaluations, and tried unsuccessfully to obtain an independent expert who would support the defense's theory that defendant was not criminally responsible for his actions. The fact that none of the medical experts supported defendant's claims regarding his mental health as related to his criminal responsibility does not render counsel's performance deficient.

The record further does not support defendant's assertion that defense counsel was not prepared for trial and failed to communicate with him, but instead indicates that defendant at times refused to assist his attorney. The trial court noted:

> [Defendant] got carried away the one time, was banging his head on the table, kinda charged the bench and had to be tackled by one of the deputies. . . . [P]rior to that he was in the library next to us, [defense counsel] was going over photos with him. He didn't – apparently he didn't like the photos. He fell down and refused to acknowledge that. That's the time I sent him to the forensic center for the second time.

[Defense counsel] had a strong, in my opinion, a strong knowledge of the facts. He knew the facts of the case. . . . I've tried numerous CSC cases, and this was the strongest case that I [have seen] the People have. . . . I don't know what more [defense counsel] could have done at trial having viewed this. But he did know the facts of the case and he was prepared.

Defendant has not demonstrated that counsel's performance was deficient, nor that he was prejudiced by counsel's performance. In addition, given the overwhelming evidence against him, defendant has not shown how additional preparation or communication with him by counsel would have affected the outcome of the trial.

## C. VIDEO EVIDENCE

Defendant next contends that the trial court abused its discretion by permitting the introduction at trial of the video evidence depicting his sexual assaults on the two victims. Defendant argues that the video recordings should not have been admitted into evidence because they were provided to defendant only days before trial and because they were so inflammatory as to be prejudicial. We disagree.

Defendant argues first that he did not have adequate notice of the video. At trial, defendant asked the trial court to suppress the video evidence because it was made available to the defense only "a few days ago," and because the prosecution had not adequately described the contents of the video. MCR 6.201(A)(6) requires a party to provide, upon request, "a description of and an opportunity to inspect any tangible physical evidence that the party may introduce at trial. . . ." Apparently, law enforcement officers in this case had not been able to download the videos from defendant's seized cell phone when they first attempted to do so, but the videos were eventually put into a format that could be admitted as evidence. Although the defense was unable to view the videos in their admissible format until shortly before trial began, this does not mean that defendant lacked notice of the content of the videos nor that disclosure was insufficient. We note that the videos were created by defendant and were discovered stored on defendant's cell phone. Defendant, therefore, was not unfamiliar with the contents of the video recordings. Defendant also was aware that the prosecution was intending to introduce the video evidence at trial because the prosecutor stated in an early pretrial statement that she was going to "seek to admit videos from cell phone." Moreover, defendant does not suggest that he or defense counsel asked to view the videos before they were able to be converted into an admissible format and were not permitted to do so.

Defendant also argues that the video recordings should not have been admitted into evidence because they were so inflammatory as to be prejudicial. Relevant evidence, generally, is admissible, MRE 402; *People v Roper*, 286 Mich App 77, 91; 777 NW2d 483 (2009), and is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. If the probative value of relevant evidence is substantially outweighed by the danger of unfair prejudice, however, relevant evidence may be excluded. MRE 403.

-5-

To weigh the probative value against the prejudicial effect of the evidence "requires the balance of several factors, including the time required to present the evidence and the possibility of delay, whether the evidence is needlessly cumulative, how directly the evidence tends to prove the fact for which it is offered, how essential the fact sought to be proved is to the case, the potential for confusing or misleading the jury, and whether the fact can be proved in another manner without as many harmful collateral effects." *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008). Whether the probative value of evidence is substantially outweighed by its prejudicial effect is best left to the trial court's contemporaneous assessment of the evidence. *Id*. We review a trial court's decision to admit evidence for an abuse of discretion. *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014).

Defendant argues that the prosecution should have relied exclusively on the photographic evidence because the videos were too "graphic" and "gripping" in nature. However, defendant does not dispute the prosecutor's claim that the videos were the only evidence of defendant's criminal conduct towards one of the victims. The victims' mother identified this victim and defendant in the one of the videos, while she identified only the other victim and defendant in the photographs. Additionally, the video was the only evidence presented to show that defendant engaged in sexual penetration with a victim, in violation of MCL 750.520b. Thus, the prosecutor's assertion that the video evidence was the only way to show the nature of the abuse of one of the children is supported by the evidence, demonstrating that the videos were not cumulative.

In addition, defendant was charged with producing child sexually abusive material, contrary to MCL 750.145c. Although the photographic evidence shows defendant engaging in sexual contact with a child, the statute also forbids the production of any film depicting child sexually abusive material. See MCL 750.145c(1)(o). The videos were the only evidence that defendant had made a film of himself sexually abusing both victims. Therefore, because certain elements of the charged offenses could be demonstrated only through introducing the videos, the trial court did not abuse its discretion by admitting them.

D. OFFENSE VARIABLES 10 AND 19

Defendant next contends that he is entitled to resentencing because his sentencing guidelines were incorrectly scored. We disagree.

On defendant's sentencing information report, defendant received a score of 15 for offense variable (OV) 10, MCL 777.40, exploitation of vulnerable victim. Defendant argues that he instead should have received a score of 10 because there was no evidence of predatory conduct. Under MCL 777.40(1)(a), 15 points should be scored for OV 10 where "[p]redatory conduct was involved." "Predatory conduct" is "preoffense conduct directed at a victim . . . for the primary purpose of victimization," MCL 777.40(3)(a), and for the purpose of "causing that person to suffer from an injurious action or to be deceived." *People v Cannon*, 481 Mich 152, 161; 749 NW2d 257 (2008). In this case, defendant engaged in predatory conduct. The evidence demonstrated that he waited until the victim's mother was away from home to assault the victims, and waited until one of the victims was asleep. He also used threats and bribes to compel the children to comply. We conclude that the trial court properly assessed 15 points for OV 10.

Defendant also contends that zero points should have been assessed for OV 19, MCL 777.49, interference with the administration of justice. Ten points are scored for OV 19 where "[t]he offender . . . interfered with or attempted to interfere with the administration of justice." MCL 777.49(c). Before trial in this case, defendant wrote letters to the victims' mother, in violation of a no contact order, asking her to lie. Defendant does not deny that he wrote the letters, but argues that the court should not have taken them seriously because he was suffering from "psychological issues" and that the letters did not succeed in convincing the mother to lie in court. This argument is not persuasive. Defendant's contention that no points were warranted because the letter did not cause a witness to lie as he intended is contradicted by the plain language of the statute, which applies when a defendant "attempted" to interfere with the administration of justice. We also note that the statute does not except offenders with "psychological issues," and, in any event, there is no evidence that defendant in fact suffers from psychological issues. The assessment for OV 19 was supported by the evidence, and defendant is not entitled to a different assessment or resentencing.

Affirmed.

/s/ Mark T. Boonstra
/s/ Kathleen Jansen
/s/ Michael F. Gadola

-7-