*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 27, 2020

Plaintiff-Appellee,

v

No. 348349
Genesee Circuit Court

JAWON DERELL TURNER,

LC No. 17-042082-FC

Defendant-Appellant.

Before: GADOLA, P.J., and GLEICHER and STEPHENS, JJ.

PER CURIAM.

A jury convicted defendant, Jawon Derell Turner, of four counts of armed robbery, MCL 750.529, and three counts of unlawful imprisonment, MCL 750.349b. The trial court sentenced defendant as a fourth habitual offender, MCL 769.12(1)(a), to serve concurrent terms of 25 to 40 years' imprisonment for each count. Defendant appeals as of right. We affirm.

## I. FACTS

### A. BACKGROUND

Defendant's convictions arise from an armed robbery of the Grand Blanc Applebee's in the early morning hours on August 11, 2017. Trial testimony established that as five employees were closing the restaurant for the evening, the bell to the back door began to ring. One employee opened the door and observed "three guys standing alongside the wall" with the one in front holding a gun. The men forced the employee to take them to the office, where the manager was handling money and closing computers. Upon entering the office, one of the men took four money drawers in the manager's presence, while three other employees were forced into the restaurant's walk-in cooler. The remaining employee, after witnessing the back door open and other employees' hands go up, escaped through the restaurant's front door and ran to a nearby Speedway, where he asked someone to call police.

Upon arrival, police officers located no suspects within the restaurant. However, officers determined that one suspect, a black male, had fled on foot. Officer Blake Hiben observed a black male, later identified as defendant, enter and exit the Speedway on two occasions within minutes.

-1-

Officer Hiben continued to observe defendant as he walked west behind the Speedway. Eventually, Officer Hiben approached defendant and attempted to interact with him. In response, defendant did not answer Officer Hiben's questions or adhere to his commands, but instead "produced a long barrel revolver from his waistband." Simultaneously, defendant ran away from Officer Hiben, who pursued defendant on foot, ultimately losing track of him as he jumped a concrete fence.

Shortly thereafter, supporting officers made visual contact with defendant. Officer Hiben observed defendant in a residential backyard crouching and slightly moving. Officer Hiben then reached defendant as he laid face down in the backyard with his left hand outstretched above his head and right hand and entire arm beneath his body. Officer Hiben secured defendant's left hand and repeatedly instructed him to produce his right hand. Defendant continuously refused, leading Officer Hiben to strike him several times in the back of the shoulder. This proved unsuccessful, so Officer Hiben struck defendant several times on the side of the head. Ultimately, Officer Hiben secured defendant's right arm after his continuous noncompliance with verbal commands, handcuffed him, and took him into custody.

Later in the morning on August 11, while in the custody of the Grand Blanc Township Police Department, defendant was interviewed by Detective Todd Gilbert. The interaction between defendant and Detective Gilbert began at 9:02 a.m., and occurred in two different locations within the department: the interview room and the garage area of the police department. The interview was video and audio recorded in part; defendant's conversation with Detective Gilbert in the garage area was not recorded. Detective Gilbert advised defendant of his *Miranda*[1] rights in the following recorded exchange:

> *Det. Gilbert*. So my understanding is that you had shaken your head and told the officer at the scene that you didn't want to talk to him them [sic]. And I'd like to talk to you now. You know, I'd like to get your side of the story on things. You know, how do you feel about that?
>
> *The Defendant*. I don't know exactly what you all are looking for or anything.
>
> *Det. Gilbert*. Well, I'm looking for your side of the story on things. That's what I'm looking at. The officer went over -- he went over stuff on the card with you and my boss says I've got to do that again. Okay? So I'm going to do that again and then we'll go back to talking. Okay?
>
> The --
>
> *The Defendant*. Do you all got one of those cigarettes I can buy because I (inaudible) --

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

*Det. Gilbert*.  Uh-huh.  No.  You don't have to buy one.  I got one.

*The Defendant*.  (Inaudible).

*Det. Gilbert*.  You've got the right to remain silent.  Anything you say will be used against you in court.  You have the right to talk to a lawyer and have them present with you before and during questioning.  If you want a lawyer and cannot afford one, one will be appointed to represent you at public expense.  If you waive the right to remain silent and later wish to stop answering questions, the questions will stop.  If you waived your right to have a lawyer present and later change your mind, the questioning will stop until you talk to your lawyer.  Okay?  Do you understand all of that?

*The Defendant*.  Uh-huh.

Detective Gilbert testified that defendant was soft-spoken and lacked any appearance of being under the influence of drugs or alcohol.  Also, defendant requested a cigarette several times during the interview and, at one point, stated "[m]y brain hurts so bad."

Defendant ultimately told Detective Gilbert during the recorded conversation in the interview room that he put the Applebee's employees in the freezer and claimed that he used an airsoft gun during the robbery.  An airsoft gun was recovered near where defendant was arrested, but police determined that it belonged to a homeowner.  Detective Gilbert later escorted defendant to the garage area so he could smoke.  Detective Gilbert testified that at this point defendant agreed to show police where he dumped the gun and clothing.  Defendant directed police to a fence near the Applebee's where they recovered a hat and shirt, but no gun.  However, the son of Brian Oskey, a nearby resident of the neighborhood where defendant was apprehended, found the loaded gun later that day and turned it over to Grand Blanc police.

## B. *WALKER*[2] HEARING AND JURY TRIAL

Before trial, defendant orally requested a *Walker* hearing.  Seeking to suppress his statements, defendant argued that he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights, and that his confession was involuntary due to the influence of drugs and a possible head injury.  The trial court denied defendant's motion, finding that *Miranda* rights were given, and defendant understood those rights and never invoked a desire to stop questioning, a refusal to talk, or the right to counsel.  The trial court further found that based on the interview video, and the accompanying transcript, defendant's free will was not abandoned because of drugs, a lack of sleep, or possible injury.

A jury convicted defendant of armed robbery and unlawful imprisonment.  Defendant now appeals to this Court.

---

[2] *People v Walker*, 374 Mich 331; 132 NW2d 87 (1965).

## II. ANALYSIS

### A. WAIVER

Defendant argues that the trial court erred when it found that defendant waived his *Miranda* rights and made his statements to Detective Gilbert. We disagree.

This Court reviews a trial court's factual findings regarding a motion to suppress for clear error. *People v Jenkins*, 472 Mich 26, 31; 691 NW2d 759 (2005). We review de novo the trial court's ultimate ruling on the motion to suppress. *People v Tavernier*, 295 Mich App 582, 584; 815 NW2d 154 (2012).

Both the United States and Michigan Constitutions guarantee the right against self-incrimination. US Const, Am V; Const 1963, art 1, § 17. "To effectuate this right, the police must warn a defendant of his or her constitutional rights if the defendant is taken into custody for interrogation." *People v Barritt*, 325 Mich App 556, 561; 926 NW2d 811 (2018). A defendant's statements to the police made during custodial interrogation are inadmissible unless the defendant voluntarily, knowingly, and intelligently waives his or her constitutional right against self-incrimination. *Id*. at 561-562. A defendant may waive the right against self-incrimination if the waiver meets two criteria:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived. [*Moran v Burbine*, 475 US 412, 421; 106 S Ct 1135; 89 L Ed 2d 410 (1986) (quotation marks and citation omitted).]

When determining whether a waiver was voluntary, this Court may consider a number of factors including, but not limited to, defendant's previous experience with police; the length of defendant's detention before he or she gave the statement in question; whether the defendant was deprived of food, sleep, or medical attention; and whether the defendant was injured, intoxicated, drugged, or in ill health when he or she gave the statement. *People v Tierney*, 266 Mich App 687, 708; 703 NW2d 204 (2005).

In this case, video and transcription evidence shows that Detective Gilbert advised defendant of his *Miranda* rights before any discussion of his criminal conduct. Defendant acknowledged these rights by stating "[u]h-huh" in response to Detective Gilbert's question as to whether he understood what was read to him. Defendant further acknowledged during the *Walker* hearing that he was read *Miranda* rights on a previous unrelated occasion when questioned by police. Also, although the video evidence shows defendant exhibiting fatigue, he nonetheless maintained eye contact, interacted with a diagram drawn by Detective Gilbert, and reflected on his participation in high school sports and his late cousin.

In addition, defendant maintains that he was under the influence of alcohol, marijuana, and pills at the time of the interview, but the record suggests otherwise. As the trial court correctly noted, defendant was not in a state of intoxication or injury that made him unable to decide to voluntarily waive his rights. The recorded interview shows that defendant was able to sit upright and give coherent responses to each question Detective Gilbert asked throughout the 45-minute interview. Moreover, defendant was in custody for at least six hours before the interview began and was able to walk without assistance for the 80 feet between the holding area and the interview room. The evidence does not suggest that defendant was unaware of what was going on or that he was unable to make a voluntary, knowing, and intelligent waiver of his right to remain silent. Therefore, based on the totality of the circumstances, the trial court did not err, and correctly found that defendant waived his constitutional right against self-incrimination.

## B. INVOCATION OF THE RIGHT TO REMAIN SILENT

"For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). In this case, defendant contends that his earlier invocation of the right to remain silent was not scrupulously honored and, thus, he was denied a fair trial. However, defendant neglected to raise this claim during the *Walker* hearing on October 30, 2018. Therefore, this issue is unpreserved.[3] This Court reviews an unpreserved argument for plain error affecting substantial rights. *People v Seals*, 285 Mich App 1, 4; 776 NW2d 314 (2009). A defendant must demonstrate that an error occurred, such "error was plain, i.e., clear or obvious," and that the plain error affected his or her substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003).

The United States Supreme Court has stated that if a suspect "indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Miranda*, 348 US at 473-474. However, such an invocation must be unequivocal and unambiguous. *Berghuis v Thompkins*, 560 US 370, 381-382; 130 S Ct 2250; 176 L Ed 2d 1098 (2010). If the suspect makes no statement, police officers are not mandated to end an interrogation or seek clarity as to whether the suspect wishes to invoke his or her *Miranda* rights. *Id.* at 381. To determine the admissibility of statements obtained after a suspect asserts the right to remain silent, a court must look at whether, under the totality of the circumstances, law enforcement "scrupulously honored" the suspect's right to cut off questioning. *Michigan v Mosley*, 423 US 96, 104; 96 S Ct 321; 46 L Ed 2d 313 (1975); *People v Slocum*, 219 Mich App 695, 705-706; 558 NW2d 4 (1996).

Here, the transcript of the recorded police interview of defendant is the only evidence that defendant invoked his right to remain silent at the time he was arrested. During the interview, Detective Gilbert told defendant the following: "[s]o my understanding is that you had shaken your head and told the officer at the scene that you didn't want to talk to him [then]." However, this

---

[3] Defendant filed a written motion to suppress and demand for *Walker* hearing on November 27, 2017. This motion was withdrawn on December 21, 2017.

evidence is insufficient to support defendant's argument that he unequivocally and unambiguously invoked his right to remain silent at the time of arrest. Detective Gilbert was not present at the time of defendant's arrest. Moreover, no testimonial evidence exists from officers or defendant himself that he invoked his right to remain silent upon arrest, which would require this Court to conduct an analysis under *Mosley*. The bare statement by Detective Gilbert, who was not present at the scene, that defendant had indicated in some manner that he did not wish to speak with the arresting officers, is insufficient to establish that defendant invoked his rights under *Miranda*. [4] Because of this, the trial court did not commit plain error and deny defendant a fair trial.

## C.  UNRECORDED STATEMENTS

Defendant also argues that the trial court failed to comply with MCL 763.9 and instruct the jury about defendant's unrecorded statements to Detective Gilbert in the garage area. "A party must object or request a given jury instruction to preserve the error for review." *People v Sabin*, 242 Mich App 656, 657; 620 NW2d 19 (2000). In this case, defendant did not request a jury instruction pursuant to MCL 763.9 or object to the jury instructions. Therefore, because this issue is unpreserved, we review for plain error affecting substantial rights. *Seals*, 285 Mich App at 4.

When interpreting a statute, this Court first examines the plain language of the statute. *People v Mattoon*, 271 Mich App 275, 278; 721 NW2d 269 (2006). "[I]f the statutory language is plain and unambiguous, then no judicial interpretation is necessary or permitted, and we presume the Legislature intended the meaning it plainly expressed." *Id*. MCL 763.8(2) provides:

> A law enforcement official interrogating an individual in custodial detention regarding the individual's involvement in the commission of a major felony shall make a time-stamped, audiovisual recording of the entire interrogation. A major felony recording shall include the law enforcement official's notification to the individual of the individual's Miranda rights.

MCL 763.9 states:

> Any failure to record a statement as required under section 8 of this chapter or to preserve a recorded statement does not prevent any law enforcement official present during the taking of the statement from testifying in court as to the circumstances and content of the individual's statement if the court determines that the statement is otherwise admissible. However, unless the individual objected to having the interrogation recorded and that objection was properly documented under section 8(3), the jury *shall be instructed* that it is the law of this state to record statements of an individual in custodial detention who is under interrogation for a major felony and that the jury may consider the absence of a recording in evaluating the evidence relating to the individual's statement. (Emphasis added.)

---

[4] MRE 602 provides, in relevant part: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony."

In this case, the trial court allowed Detective Gilbert to testify about his unrecorded conversation with defendant in the garage area of the Grand Blanc Township Police Department regarding details of an armed robbery at the Applebee's on Hill Road. Armed robbery is among the crimes that requires police to record interviews of suspects. MCL 750.529. In addition, the plain language of MCL 763.8(2) states that the *entire* custodial interrogation of defendant should have been recorded. By continuing to interrogate defendant in the garage area and failing to record that portion of the interview, Detective Gilbert did not comply with MCL 763.8(2). Relatedly, MCL 763.9 requires the trial court to instruct the jury regarding the existence of MCL 763.8(2) and that it "may consider the absence of a recording in evaluating the evidence relating to the individual's statement." This instruction was not provided to the jury; thus, the trial court committed a clear and obvious error.

However, a plain, unpreserved error must also be outcome determinative for an appellate court to consider it for the first time on appeal. *People v Grant*, 445 Mich 535, 553; 520 NW2d 123 (1994). In this case, the trial court provided instructions to the jury before deliberation that specifically addressed witness credibility and defendant's statements. See M Crim JI 3.6 and M Crim JI 4.1. When assessing the credibility of a witness, the juror evaluates whether the testimony of the witness is believable based in part on common sense and the evidence. M Crim JI 3.6. Likewise, the jury must determine whether the defendant made a statement presented by the prosecution during trial, and assess the importance of such a statement on the entire case. M Crim JI 4.1. Here, Detective Gilbert testified during cross-examination to not recording his conversation with defendant in the garage area. Through defense counsel's questioning of Detective Gilbert the jury was made aware of the fact this portion of the interview was unrecorded and could weigh the credibility of the testimony with that fact in mind. This allowed the jury to evaluate Detective Gilbert's credibility as well as the facts relating to whether or not defendant made the statements. "[N]o error results from the omission of an instruction if the charge as a whole covers the substance of the omitted instruction." *People v Messenger*, 221 Mich App 171, 177-178; 561 NW2d 463 (1997).

Finally, the unrecorded portion of the interview involved what defendant allegedly told Detective Gilbert about where he had disposed of the airsoft gun and some clothing. Defendant had by that time already confessed, while being recorded, that he had confined the employees in the restaurant cooler while using an airsoft gun. Under these circumstances defendant cannot establish that he was prejudiced by the failure to give the jury instruction at issue.

## D. INEFFECTIVE ASSISTANCE OF COUNSEL

Last, defendant argues that trial counsel was ineffective. Specifically, defendant contends that trial counsel was ineffective for not challenging the voluntary nature of his confession. Defendant further contends that trial counsel provided ineffective assistance of counsel for failing to preserve the issue addressing his prior invocation of the right to remain silent and for not requesting a jury instruction pursuant to MCL 763.9. We disagree.

The United States and Michigan Constitutions provide that in all criminal prosecutions the accused shall have the right to effective assistance of counsel. *People v Kammeraad*, 307 Mich App 98, 122; 858 NW2d 490 (2014). An ineffective assistance of counsel claim presents a mixed question of fact and constitutional law. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706

(2007). "Findings on questions of fact are reviewed for clear error, while rulings on questions of constitutional law are reviewed de novo." *Id.* If a criminal defendant does not ask the trial court for a new trial or an evidentiary hearing based on an ineffective assistance of counsel claim, this Court's review is limited to mistakes apparent from the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

To prove ineffective trial counsel, the defendant must show that "(1) the lawyer's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for the lawyer's deficient performance, the result of the proceedings would have been different." *People v Anderson*, 322 Mich App 622, 628; 912 NW2d 607 (2018). " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id.*, quoting *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). We presume effective assistance of counsel and, thus, the criminal defendant bears a heavy burden of proof. *People v Schrauben*, 314 Mich App 181, 190; 886 NW2d 173 (2016).

Here, defendant did not ask for an evidentiary hearing or new trial based on ineffective assistance of counsel. As a result, our review is limited to mistakes apparent from the record. Defendant's first argument, that trial counsel was ineffective for failing to raise the issue of the voluntariness of his confession to Detective Gilbert, lacks merit. Trial counsel orally moved to suppress defendant's statements made during the entire interview with Detective Gilbert. As a basis for this motion, trial counsel noted defendant's alcohol and drug use before his criminal conduct and the possibility of injury suffered at the time of arrest. In response to defense counsel's motion, the trial court conducted a *Walker* hearing, addressing the voluntary nature of defendant's statements to Detective Gilbert. Therefore, despite the ruling against defendant, trial counsel's strategy prior to and during the *Walker* hearing was not objectively unreasonable and the record belies defendant's assertion that trial counsel did not raise this issue.

Defendant argues trial counsel was ineffective for not arguing during the *Walker* hearing that his prior invocation of the right to remain silent at the time of his arrest was not scrupulously honored and for failing to preserve this issue for appeal. As mentioned, a defendant's prior invocation of his *Miranda* rights must be unequivocal and unambiguous, *Berghuis*, 560 US at 381-382, and even in such a situation, Michigan law allows police to reinterrogate so long as the prior invocation of rights was "scrupulously honored." See *Slocum*, 219 Mich App at 704-706. However, the only evidence establishing defendant's prior invocation of his right to remain silent was Detective Gilbert's testimony, which as previously discussed, is insufficient to establish that defendant invoked his right to remain silent. The record lacks any indication that defendant unequivocally invoked his right to remain silent at the time of his arrest. Detective Gilbert interviewed defendant over six hours after his arrest, informed defendant that he may have given some indication to the arresting officers that he did not wish to talk with them at that time, and read *Miranda* warnings to defendant before questioning him. Defendant confirmed that he understood his *Miranda* rights by answering affirmatively in response. Furthermore, defendant's previous interactions with law enforcement would tend to support that he understood his right to remain silent, which he waived after Detective Gilbert read him his rights. Thus, trial counsel's decision to forego the argument that defendant unquestionably invoked his right to remain silent at the time of his arrest, and that this invocation was not scrupulously honored, does not meet the threshold of ineffective assistance of counsel.

Finally, defendant argues that trial counsel was ineffective for failing to object to the jury instructions and not requesting an instruction pursuant to MCL 763.9. On this issue, trial counsel's performance arguably failed to satisfy the objective standard of reasonableness. However, defendant has not established how the inclusion of an MCL 763.9 jury instruction would have resulted in his acquittal. Trial counsel's cross-examination of Detective Gilbert alerted the jury to the incompleteness of the recording of defendant's interview. In addition, the jury viewed the portion of Detective Gilbert's interview with defendant that was recorded, which also addressed his criminal conduct. Furthermore, the trial court instructed the jury on witness credibility in general and the introduction of defendant's statements as evidence. Based on this, the record does not support defendant's assertion that he was prejudiced and the jury verdict would have been different had the trial court included the instruction set forth under MCL 763.9. Therefore, defendant has not demonstrated a reasonable probability that, but for trial counsel's deficient performance regarding the jury instructions, the verdict would have been different.

Affirmed.


/s/ Michael F. Gadola
/s/ Elizabeth L. Gleicher
/s/ Cynthia Diane Stephens