*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 25, 2022

Plaintiff-Appellee,

v

No. 355944
Berrien Circuit Court
LC No. 2019-001637-FH

TIFFANY DENISE MAIN,

Defendant-Appellant.

Before: RICK, P.J., and BOONSTRA and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the trial court's order denying her motion to withdraw her plea of guilty to a probation violation. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In 2019, defendant pleaded guilty to third-degree fleeing and eluding, MCL 257.602a, operating a drug vehicle, MCL 333.7405, and unlawful use of a motor vehicle, MCL 750.414. The trial court imposed sentences of time served for each of her convictions, along with 24 months of probation. In 2020, defendant pleaded guilty to violating the terms of her probation, and the trial court revoked probation and imposed concurrent prison sentences of 23 to 60 months for the fleeing-and-eluding conviction and 16 to 24 months for the drug-vehicle conviction. Defendant filed a motion to withdraw her guilty plea or for resentencing, which the trial court denied. In 2021, defendant filed a delayed application for leave to appeal, which this Court denied.[2] However, the Supreme Court subsequently remanded the case to this Court "for consideration as on leave granted." *People v Main*, 508 Mich 981; 966 NW2d 154 (2021).

_____

[1] See *People v Main*, 508 Mich 981; 966 NW2d 154 (2021).

[2] *People v Main*, unpublished order of the Court of Appeals, entered March 10, 2021 (Docket No. 355944).

## II. PLEA WITHDRAWAL

Defendant argues that she should be permitted to withdraw her plea of guilty to a probation violation because the judge who presided over her probation revocation and sentencing hearing was not the judge who had imposed her original probation sentence. We disagree. Defendant raised this issue in her motion to withdraw her plea. Therefore, the issue is preserved. We review for an abuse of discretion a trial court's decision regarding a motion to withdraw a plea. *People v Martinez*, 307 Mich App 641, 646; 861 NW2d 905 (2014). "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *Id*.

It is undisputed that the judge who initially placed defendant on probation was not the judge who presided over her probation revocation and sentencing hearing. Circuit Judge Sterling R. Schrock accepted defendant's guilty pleas to third-degree fleeing and eluding, operating a drug vehicle, and unlawful use of a motor vehicle, and sentenced her for those convictions. Judge Schrock then presided over several subsequent hearings as a function of defendant's participation in the Swift and Sure Sanctions Probation Program. However, Circuit Judge Charles T. LaSata accepted defendant's guilty plea on the charge of violating her probation and imposed the attendant sentences.

"[A] judge who sentences a defendant to probation retains jurisdiction over the case in all subsequent proceedings, including revocation of probation." *People v Manser*, 172 Mich App 485, 487; 432 NW2d 348 (1988). However, when the original judge is "absent or unable to act," a different judge who is "otherwise empowered to rule in the matter" may act in place of the original judge. MCR 2.613(B). In this case, Judge LaSata stated that he was presiding over the probation revocation and sentencing because he had "inherited Judge Schrock's docket" and succeeded him as "the Swift and Sure judge." The record does not indicate whether Judge Schrock was actually "absent or unable to act." We note that many cases have held that MCL 771.4 and MCR 2.613(B) mandate that, unless absent or otherwise unavailable, the judge who sentenced a defendant to probation must conduct any subsequent probation violation hearing. See *People v Rose*, 117 Mich App 530, 536; 324 NW2d 25 (1982); *People v Clemons*, 116 Mich App 601, 605; 323 NW2d 300 (1981); *People v Williamson*, 113 Mich App 23, 25-26; 317 NW2d 271 (1982); *People v McDonald*, 97 Mich App 425, 432; 296 NW2d 53 (1980); *People v Biondo*, 76 Mich App 155, 160; 256 NW2d 60 (1977). The policy underlying the requirement that the original judge retain jurisdiction over the entirety of probation proceedings is "to insure that revocation will be considered by the judge who is most acquainted with the matter." *Clemons*, 116 Mich App at 604. See also *McDonald*, 97 Mich App at 432. If Judge Schrock was not, in fact, "absent or unable to act," then Judge LaSata's presiding over the probation revocation and sentencing may indeed have been error.[3]

---

[3] We note that Judge LaSata made statements suggesting that defendant had waived her right to have Judge Schrock preside over her revocation and sentencing hearing because she had "consented to the jurisdiction of the Swift and Sure program" and Judge Schrock's assignment to that program had ended. It is therefore possible that defendant waived Judge Schrock's sentencing role as part of her participation in that program, but there are no documents in the record indicating

However, "reversal is not automatically required where another judge conducts the revocation hearing." *People v McIntosh*, 124 Mich App 705, 709; 335 NW2d 129 (1983).[4] In *McIntosh*, this Court affirmed the defendant's probation revocation and sentence as administered by a successor judge—even while recognizing that the better practice is for the original judge to determine whether the defendant's probation should be revoked—because the defendant neither objected in the trial court nor showed on appeal that he was prejudiced. *Id*. at 710. This Court stated, "We will not permit defendant to wait until after the judge has found a probation violation and then object because the matter had proceeded before the wrong judge." *Id*. at 709; compare *Manser*, 172 Mich App at 487 (reversing and remanding for proceedings before the original judge when the defendant had timely objected to proceeding before a different judge).

In this case, defendant did not object to Judge LaSata's replacing Judge Schrock at her combined probation revocation and sentencing hearing. Judge LaSata, relying on *McIntosh* and on defendant's failure to object, then denied defendant's motion to withdraw her plea. Judge LaSata correctly decided the matter in accordance with *McIntosh* because a defendant will not be found to have been prejudiced by another judge's presiding over probation revocation and sentencing when the defendant did not timely object. *McIntosh*, 124 Mich App at 709-710.

Further, defendant has failed to demonstrate prejudice. She offers no reason to doubt Judge LaSata's assurances from the bench that he was familiar with the facts underlying defendant's probation. Judge LaSata relied on information provided by a probation officer about the history of this case and the events underlying defendant's probation terms. In denying defendant's motion to withdraw her plea, Judge LaSata stated that he was "advised in the premises there were multiple violations in this instance." As is discussed later in this opinion, defendant has not demonstrated any lack of information bearing on Judge LaSata's sentencing decision.

For these reasons, the trial court did not abuse its discretion by denying defendant's motion to withdraw her plea. *Martinez*, 307 Mich App at 646.

### III. INACCURATE INFORMATION AT SENTENCING

Defendant also argues that the trial court erred by relying on inaccurate information when sentencing her. We disagree. This Court reviews for clear error the trial court's factual

---

that defendant expressly did so. Nonetheless, we need not decide this issue in light of our conclusion that reversal is not warranted.

[4] Court of Appeals cases published before November 1, 1990 are not binding on this Court. See MCR 7.215(J)(1). However, they may be considered for their persuasive value. *People v Barbarich*, 291 Mich App 468, 476 n 2; 807 NW2d 56 (2011). Further, this Court has traditionally regarded older published cases as "retaining some authority, at least if they were not disputed by some other contemporaneous case." *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018). In any event, the holding in *McIntosh* comports with our general rule that a party may not harbor error for use as an appellate parachute if they receive an unfavorable ruling from the trial court. See *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 96; 693 NW2d 170 (2005).

determinations at sentencing. See *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). Generally, "[w]e review a trial court's response to a claim of inaccuracy in the PSIR for an abuse of discretion." *People v Lucey*, 287 Mich App 267, 275; 787 NW2d 133 (2010). We also review for an abuse of discretion a trial court's decision on a motion for resentencing. *People v Puckett*, 178 Mich App 224, 227; 443 NW2d 470 (1989).

"A defendant is entitled to be sentenced by a trial court on the basis of accurate information." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). "[A] sentence is invalid if it is based on inaccurate information." *People v Miles*, 454 Mich 90, 96; 559 NW2d 299 (1997). See also *People v Sharp*, 192 Mich App 501, 509-510; 481 NW2d 773 (1992) ("the use of inaccurate information at sentencing may violate defendant's right to due process").

Defendant argues that a probation officer falsely stated at sentencing that defendant had left a substance-abuse treatment program, Kalamazoo Probation Enhancement Program (KPEP), without permission because she was not allowed to smoke at the facility. Defendant asserts that she instead left the facility because she thought she was going to be transported to a different facility, and that she was concerned that she might miss a hearing in another court. At the plea hearing, defendant admitted that she had absconded from KPEP, but her reasons for leaving were not discussed at that hearing. Defendant also confirmed that she had absconded from a second drug treatment facility at a later date, and she pleaded guilty to violating her probation by doing so. Both defendant and her trial counsel addressed the trial court after the probation officer spoke, and neither contested any of the officer's statements.

In explaining its decision to impose a sentence of imprisonment, the trial court stated, "Obviously, when you're not in custody and under the thumb of the sheriff and the court, you like to use methamphetamine and marijuana. That doesn't help things. You have a miserable record and you pose an imminent, immediate threat to the community." The court continued, "You got eight probation violations here. . . . You're gonna do what you wanna do when you wanna do it. You're gonna find out that . . . paves the path of prison. You failed on probation." The trial court referred to defendant's continued drug use and frequent probation violations—but not to her specific motives for leaving KPEP—on one occasion. The trial court also made no reference to the probation officer's testimony regarding defendant's reasons for absconding from KPEP. Accordingly, there was no evidence that defendant's sentence was based on any statement by a probation officer concerning why defendant had left KPEP, and defendant has failed to establish clear error in this regard. *Hardy*, 494 Mich at 438.

Defendant also argues that a probation officer made a false statement at the probation violation hearing regarding her stay at the hospital where she was scheduled to give birth. The officer testified that the trial court had given defendant permission to have her baby at the hospital, as scheduled, but that she left the hospital "within an hour and was gone again for a while." The officer continued as follows:

> She did go back to the hospital on her own a couple weeks later, if I remember right, had the baby; and the hospital was aware of her situation, they notified Indiana's equivalent of CPS, especially with the baby being born positive for meth, and they, in turn, called the La Porte County Sheriff's Department and had her arrested as she was leaving the hospital.

Defendant argues that the officer mischaracterized the events surrounding her leaving the hospital, noting that she was on a personal recognizance bond for eight days from the date that she arrived at the hospital, and asserting that she had rescheduled her procedure upon arrival because she wanted her mother present and also needed toiletries. The record indicates that the trial court had granted a personal recognizance bond for defendant so that she could have her baby as scheduled, on September 11, 2019, and ordered that she return for a hearing on September 17, 2019. However, the trial court revoked defendant's bond and issued a warrant for her arrest because of concern for the child after defendant walked away from the hospital soon after her arrival.

The officer's testimony largely comports with record evidence. Defendant argues that that the officer falsely stated that she violated her bond by leaving the hospital initially, protesting that her return soon afterward kept her within the timeframe of the court's order. However, the officer did not state that defendant had violated her bond in that situation, but merely described the circumstances of her previous bond revocation, including that she later returned to the hospital to have her baby. The officer contended that defendant's failure to initially stay at the hospital for even an hour, the two times that she absconded from drug treatment programs, and the other times that she absconded during previous cases, supported the officer's recommendation to revoke defendant's probation because defendant "has no intention of completing any type of community supervision." Further, on the day that defendant was transported to the hospital, the trial court stated, "She's on bond at the discretion of the court and it was clearly a bond that was conditioned on . . . allowing her to undergo the medical procedure because she has made arrangements to have this procedure in the state of Indiana."

Moreover, the trial court was familiar with the events surrounding the revocation of plaintiff's bond. The trial court stated at the bond revocation hearing that it was informed that the hospital staff was preparing defendant for surgery, and that although defendant stated that she wanted family present, she left the hospital even though the staff told her that they would attempt to make arrangements for her family to be present. The trial court added, "Technically, she clearly is not being compliant with what was clearly the intent of the personal recognizance bond based upon the information that I've been provided," and elaborated as follows:

> I noted . . . that I would . . . authorize a release on a $100,000 . . . personal recognizance as of her transport to . . . the Indiana hospital for the medical procedure. So, she's no longer in an Indiana hospital undergoing a medical procedure. . . . So far as the Court is concerned, she's in violation of the conditions of that bond as soon as she left the hospital. She clearly understood the spirit and the intent . . . of the bond. She has failed to report a probation agent . . . on release . . . .

Therefore, the trial court was well aware that it had revoked defendant's bond on the day that she was transported to the hospital to give birth. It is possible that the officer's statement at sentencing—assuming the officer was aware of defendant's actions—was incomplete, but it was not demonstrably false. Most importantly, there is no evidence that the trial court considered the statement when issuing the sentence. The trial court clearly stated that the sentence was based on defendant's continued noncompliance with sobriety and the requirements of her probation. The officer's reference to defendant's earlier bond revocation, which was not adjudicated as a

probation violation, or defendant's reasons for leaving the hospital, were not included in the trial court's reasoning.

For these reasons, the trial court did not abuse its discretion by denying defendant's motion for resentencing. *Puckett*, 178 Mich App at 227.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that her counsel was ineffective for failing to raise in the trial court the issues that she now raises on appeal. We disagree. We review de novo the constitutional question whether an attorney's performance deprived a defendant of the right to counsel. *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008).

A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. This "right to counsel encompasses the right to the effective assistance of counsel." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). The "effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001). Counsel's performance is deficient if "it fell below an objective standard of professional reasonableness." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). In order to prevail on a claim of ineffective assistance of counsel, a defendant must show (1) "that counsel's performance was deficient" and (2) "that counsel's deficient performance prejudiced the defense." *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007) (quotation marks and citation omitted).

In this case, defendant argues that her attorney should have objected to Judge LaSata presiding over her probation revocation and sentencing hearing, when it was Judge Schrock who had placed defendant on probation and presided over several attendant hearings. As discussed, such an objection might well have been sustained. But it is also possible that defense counsel preferred that a judge other than Judge Schrock, who had imprisoned defendant for contempt of court after an outburst, oversee the probation revocation proceedings and sentencing at issue. Defendant has not demonstrated that counsel's failure to object was not a matter of sound trial strategy. See *People v Henry*, 239 Mich App 140, 146; 607 NW2d 767 (1999) (A defendant claiming ineffective assistance must overcome a strong presumption that counsel's tactics were matters of sound trial strategy).

In any event, defendant cannot demonstrate that she was prejudiced by her counsel's failure to object. *Jordan*, 275 Mich App at 667. Defendant does not argue that Judge LaSata imposed a harsher sentence than what Judge Schrock would have imposed. As discussed, Judge LaSata was familiar with the allegations against defendant and accepted her probation-violation plea. Defendant does not argue that she would not have so pleaded if Judge Schrock had presided. Defendant has thus failed to even argue that the results of the proceedings against her would have differed if not for her counsel's failure to object. *Id.*

Defendant also argues that her counsel was ineffective for failing to object to allegedly inaccurate statements by a probation officer at sentencing. However, as discussed, the reasons that defendant left KPEP and her birthing hospital were not at issue. The trial court sentenced

defendant on the basis of her probation violations and persistent drug use. Defendant's reasons for violating her probation were not discussed. Further, defendant herself was invited to comment after the remarks, and before sentence was pronounced, yet failed to clarify these points. Moreover, the trial court did not rely on any of the allegedly false information in sentencing defendant. Defendant has not demonstrated prejudice. *Id.*

Affirmed.

/s/ Michelle M. Rick
/s/ /Mark T. Boonstra
/s/ Colleen A. O'Brien