*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

          Plaintiff-Appellee,

v

MATTHEW LEE MATTON-HADLEY,

          Defendant-Appellant.

UNPUBLISHED
May 13, 2025
3:20 PM

No. 364202
Kent Circuit Court
LC No. 21-004995-FH

Before: SWARTZLE, P.J., and K. F. KELLY and MURRAY, JJ.

PER CURIAM.

Defendant was convicted after trial of one count of third-degree criminal sexual conduct (CSC) and one count of fourth-degree CSC. Defendant challenges the admission of expert testimony, and he alleges that he received ineffective assistance of counsel, his right to appeal was impeded by the unavailability of transcripts, and the trial court erred in sentencing. We affirm.

## I. BACKGROUND

At the time of the offenses, 13-year-old HB lived with her aunt, Lisa Ainsworth. Defendant was also charged for alleged sexual conduct against HB's relative, 10-year-old DB. The prosecutor filed notices to introduce other-acts evidence involving DB in the case for HB, and about HB in the case for DB. Defense counsel moved to exclude the other-acts evidence, and the trial court denied the motion, after which defense counsel consented to the joinder of the cases, which she had informed defendant that she would do.

The prosecutor also provided notice to introduce expert testimony from Thomas Cottrell, and defendant moved to exclude the testimony. Defense counsel also asked for an adjournment to find and consult an expert to rebut Cottrell's testimony. The trial court took defendant's request for a *Daubert*[1] hearing under advisement, but denied defense counsel's request for an adjournment.

---

[1] *Daubert v Merrell Dow Pharms, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993).

At trial, HB testified that, on the night of the incident, she had stayed the night at her relative's, Theresa Emmons's, home. Theresa's daughter, Josephine, was dating defendant, and they also lived with Theresa. HB was in the basement with defendant and his son, DA, when defendant kissed her on the lips and then touched her breasts with his hand and mouth. Defendant had HB sit on the ground between his legs, and he touched the inside of her vagina with his hand. HB stood up, said she wanted to go to sleep, and defendant "hit" her butt. HB left the basement and went to sleep on a couch in the living room. HB was unable to fall asleep because she was scared. Defendant came upstairs, kissed her on the lips, said goodnight, and went to bed. Later, defendant sat by HB's feet on the couch. HB pretended to be asleep, while defendant rubbed her side. Eventually, defendant left the room.

Defendant texted HB the next day, asking, "you alive?" HB did not respond. The prosecutor presented a screenshot showing this message. HB stated that she and defendant had rarely texted before, and they did not text after. HB did not initially tell anyone what had happened because she was afraid that somebody would get hurt. A week later, however, HB told her mother. During cross-examination, defense counsel asked HB about looking at her counselor during questioning, and HB said that she "was looking at everyone."

HB's mother testified that she contacted defendant after she spoke with HB. Defendant said that he had accidentally touched HB's breast area while tickling her. Defendant admitted that he touched HB on the thigh and tried to kiss her.

Ainsworth testified that she did not notice HB act differently after the incident. Once HB disclosed the incidents to her, Ainsworth talked with DB's mother, and DB disclosed that defendant may have touched her inappropriately. Ainsworth had not spoken with Theresa since the incident because Theresa did not believe that defendant was guilty.

Detective Margaret McKinnon testified that Josephine expressed surprise about the allegations, and DB's mother reported that DB "at first, denied that anything inappropriate had ever happened." Detective McKinnon did not download information from any of the individuals' phones because there was no indication of ongoing communication between defendant and HB.

After the second day of trial, the prosecutor asserted that she intended to call Cottrell, but would limit his testimony to topics involving delayed disclosure, grooming, offender tactics, dynamics of disclosure, and victim responses to abuse. Defense counsel objected to the testimony. The prosecutor argued that Cottrell's testimony would be helpful in understanding a victim's response to sexual assault. For example, the jury had asked whether HB was able to move or could have gotten up and left. The trial court determined that Cottrell could testify.

Cottrell testified that he had testified as an expert over 300 times. Defense counsel asked Cottrell if was aware that his testimony had been criticized by appellate courts, and the prosecutor objected to the question as irrelevant. Defense counsel asserted that it was relevant because Cottrell stated that he had testified over 300 times. The trial court sustained the objection.

Cottrell explained that he had not met with the parties or reviewed anything related to this case. He testified that delayed disclosure was common with child sexual abuse and that it was not uncommon for a victim to provide limited resistance during an assault. Defense counsel

thoroughly cross-examined Cottrell, asking questions showing that various, conflicting behaviors could be consistent with abuse, including, for example, freezing during the abuse *or* leaving. Cottrell testified that "children's reaction to being abused is incredibly variable" and that adults could spend time with children and give them gifts without engaging in "grooming" behaviors.

Defendant was convicted of CSC-III and CSC-IV related to HB. Defendant was acquitted of the charge related to DB. At sentencing, defense counsel objected to various statements in the presentence investigation report (PSIR), resulting in offense variable (OV) changes. The trial court assessed 10 points for OV 4 and sentenced defendant to five to 15 years in prison.

Defendant filed several postjudgment motions. In a motion to settle the record, defendant explained that the trial transcript ended before DB's testimony was complete. The transcript included DB's direct examination, cross-examination, redirect examination, and recross-examination, but the audio had stopped recording for about 16 minutes. The trial court had given the jury the opportunity to ask questions, but nothing was transcribed after DB's answer to one jury question. Defendant also moved for resentencing on the basis that the trial court erred by assessing 10 points for OV 4.

During a hearing on the motions, the trial court noted that HB testified at trial about being in counseling. Her counselor had also attended trial. Further, because the cases involved CSC, the assessment of points was proper given the likelihood that HB would need psychological treatment. The prosecutor argued that HB had testified that she had been afraid, shocked, and could not sleep. The trial court found that the record was sufficient to support the 10-point assessment for OV 4. As to the missing transcript portion, the trial court noted that defendant had been acquitted of the charge related to DB and stated that it would review video of the trial.

Defendant subsequently moved for a new trial on the basis of the incomplete transcripts, arguing that the missing information impeded his constitutional right to an appeal. During a hearing on the motion, the trial court explained that the recording on the day of the missing transcript stopped from 4:30 p.m. until 4:45 p.m. and that the trial court typically ended trial at 4:45 p.m. to let people leave the building. Before excusing jurors, the trial court would give instructions, which would take at least 5 to 10 minutes. The trial court also noted that the transcript included DB's direct and cross examination. Because the jury did not rely on the last minutes of DB's testimony to convict defendant of assaulting HB, the missing minutes did not prejudice defendant. After another motion to settle the record, the trial court issued a written order, concluding the issue.

Defendant also moved for an evidentiary hearing on the basis that he was denied the effective assistance of counsel. Defendant attached affidavits prepared by himself, Josephine, and DA's mother. In his affidavit, defendant asserted that defense counsel refused to have Josephine testify that he was sleeping when HB alleged that he assaulted her in the living room. Further, defendant stated that Theresa could have testified that DB's mother did not believe the allegations against defendant, which was inconsistent with how DB's mother testified at trial about DB's allegations. Defendant further claimed to have evidence in his phone that would show that HB had lied during her testimony about deleting messages. Defendant asserted that he showed defense counsel pictures of HB on vacation following the incident, which would have countered the trial

court's finding that HB suffered emotional distress. Finally, defendant was not advised that counsel could have been present for his PSIR interview.

Josephine asserted in her affidavit that she had informed defense counsel that she was on the main floor of the home when defendant and HB were in the basement. She could have testified about their demeanor when they came upstairs, and their sleeping arrangements. DA's mother stated in her affidavit that no detective had contacted her to speak with DA about the case.

The trial court held a hearing on the motion, but was not convinced that anything useful would be learned from an evidentiary hearing, and ultimately denied the motion.

Defendant now appeals.

## II. ANALYSIS

### A. EXPERT TESTIMONY

First, defendant argues that the trial court erred by allowing Cottrell to testify as an expert witness without holding a *Daubert* hearing. We review for an abuse of discretion a trial court's decision to admit or exclude evidence. *People v Thorpe*, 504 Mich 230, 251; 934 NW2d 693 (2019). A trial court abuses its discretion when its decision does not fall within the range of reasonable and principled outcomes. *People v Yost*, 278 Mich App 341, 353; 749 NW2d 753 (2008). Whether a statute or court rule precludes the admission of evidence is a matter of law that this Court reviews de novo. *Id.* "A decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *Thorpe*, 504 Mich at 252.

"Generally, expert testimony is not admissible unless the trial court first determines that the expert's theories, methodology, and underlying data are reliable under MRE 702, which in turn, incorporates the standards of reliability that the United States Supreme Court established in [*Daubert*]." *People v Spaulding*, 332 Mich App 638, 658; 957 NW2d 843 (2020). At the time of trial, MRE 702[2] provided:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The proposed evidence must "have some rational benefit to the trier of fact's ability to resolve a fact at issue." *Spaulding*, 332 Mich App at 658.

---

[2] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. We rely on the version of the rules in effect at the time of trial.

First, Cottrell's testimony was of the kind that would assist the jury in understanding the victims' behaviors. See MRE 702. It is also undisputed that Cottrell has significant experience in the area of counseling victims of child sexual abuse. Defendant asserts, however, that Cottrell's testimony was not properly supported by reliable scientific methodology. To the contrary, the treatment and study of victims of child sexual abuse is recognized as a specialized field of expertise. See *People v Beckley*, 434 Mich 691, 718; 456 NW2d 391 (1990). The lack of empirical data from scientific studies is not fatal to proposed expert testimony. An expert's opinion supported by clinical observation of a class of victims may be sufficiently reliable to satisfy the requirements of MRE 702. See *In re Noecker*, 472 Mich 1, 11-12; 692 NW2d 440 (2005). Accordingly, the trial court did not abuse its discretion by allowing Cottrell to testify about characteristics exhibited by child victims of sexual abuse without first holding a *Daubert* hearing.

Defendant further asserts that Cottrell's testimony impermissibly vouched for the victims' credibility. A witness may not generally give an opinion on the credibility of another witness because questions of credibility are to be determined by the jury. *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007). Moreover, "[a]n expert may not vouch for the veracity of a victim." *Id*. Our Michigan Supreme Court has held that "(1) an expert may not testify that the sexual abuse occurred, (2) an expert may not vouch for the veracity of a victim, and (3) an expert may not testify whether the defendant is guilty." *People v Peterson*, 450 Mich 349, 352; 537 NW2d 857 (1995), amended by 450 Mich 1212 (1995). An expert may, however, testify about the "typical and relevant symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an actual abuse victim" and about "the consistencies between the behavior of the particular victim and other victims of child sexual abuse to rebut an attack on the victim's credibility." *Id*. at 352-353.

In this case, Cottrell testified about the general characteristics exhibited by victims of child sexual abuse. He admitted that he never met HB or DB, nor had he reviewed anything related to this specific case. He did not comment on whether the sexual abuse occurred, whether HB or DB was telling the truth, or whether defendant was guilty. As a result, Cottrell's testimony did not cross the line into vouching for a victim's veracity.

Defendant accurately points out that Cottrell's testimony has been criticized in previous opinions released by this Court and our Supreme Court. See, e.g., *Thorpe*, 504 Mich at 259. In this case, however, Cottrell testified about the general characteristics exhibited by victims of child sexual abuse. The testimony that Cottrell gave in this case was distinguishable from the cases in which his testimony has been criticized, and it was permissible.

Relatedly, defendant argues that the trial court denied him of his right to present a defense when it sustained an objection to defense counsel's attempt to question Cottrell about the criticism of his testimony. "A criminal defendant has a due process right to present a defense under the state and federal Constitutions." *People v Solloway*, 316 Mich App 174, 198; 891 NW2d 255 (2016). Under MRE 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

In this case, Cottrell did not specifically testify in ways that have been criticized previously. In *Thorpe*, 504 Mich at 259, for example, our Supreme Court concluded that Cottrell's testimony

vouched for the complainant's credibility when he testified "that children lie about sexual abuse 2% to 4% of the time." With that said, the prosecutor's question about Cottrell's experience, and Cottrell's answer about testifying hundreds of times, was not limited to just cases in which he gave proper testimony, and it was arguably erroneous for the trial court not to allow defense counsel to engage in limited questioning to give a more complete picture about Cottrell's history of testifying, without giving the impression that this history was without incident.

Even if this was an error, however, it was harmless. Cottrell could have easily explained that his testimony in this trial would avoid topics on which he had been criticized. Moreover, defense counsel extensively cross-examined Cottrell. Cottrell acknowledged that there was no behavior that exclusively predicted whether sexual abuse occurred. He stated that he had not met the complainants or reviewed anything in the case. Given the limited scope of Cottrell's testimony in this case, which did not stray into the areas for which courts have previously criticized him, it is unlikely that the exclusion of testimony related to criticism of his previous testimony in other cases affected the outcome of defendant's trial. Accordingly, the trial court did not violate defendant's right to present a defense.

## B. EFFECTIVE ASSISTANCE OF COUNSEL

Next, defendant argues that he is entitled to an evidentiary hearing to address whether he was denied the effective assistance of counsel. Defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. This right includes the right to the effective assistance of counsel. *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). "Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *Solloway*, 316 Mich App at 187.

To establish a claim of ineffective assistance of counsel, defendant must demonstrate that: (1) defense counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007). Defense counsel's performance is deficient if it fell below an objective standard of professional reasonableness. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). Defendant bears a heavy burden to show that counsel made errors so serious that counsel was not performing as guaranteed by the Sixth Amendment, and defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001), citing *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). The performance will be deemed to have prejudiced the defense if it is reasonably probable that, but for counsel's error, the result of the proceeding would have been different. *Jordan*, 275 Mich App at 667.

## 1. FAILURE TO PRESENT EXCULPATORY EVIDENCE

Defendant first argues that defense counsel was ineffective for failing to present exculpatory evidence, including testimonies from Josephine and Theresa, defendant's phone records, and a photo allegedly showing HB enjoying herself with her family after she disclosed the allegations in this case. "[D]ecisions regarding what evidence to present, what evidence to highlight during closing argument, whether to call witnesses, and how to question witnesses are

presumed to be matters of trial strategy." *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015).

The decision to call either of these witnesses was a matter of trial strategy. "[A] court cannot insulate the review of counsel's performance by calling it trial strategy," because, first, we must conclude that the strategic choices were made following a complete investigation. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Defendant has not, however, demonstrated that defense counsel failed to exercise reasonable professional judgment in the presentation of his defense, or, specifically, that these proposed witnesses would have provided any meaningful testimony not already presented at trial.

Neither Josephine nor Theresa witnessed the incidents in question. Josephine admitted in her affidavit that the parties were in the basement without her, and a description of HB's demeanor when she returned would have been of marginal relevance on whether the incident occurred. Defendant claimed that Josephine would testify that he was asleep when he purportedly went to the living room, and Josephine stated that she would testify about the sleeping arrangements, but this does not detract from HB's testimony about the basement and living room.

Similarly, Theresa testifying that DB's mother did not believe the allegations would not prove or disprove that the incidents occurred. DB's mother was not present when any of the incidents were alleged to have occurred. In any event, Ainsworth testified that Theresa did not believe the allegations. Therefore, the jury was informed that members of the family did not believe the allegations. Detective McKinnon also testified that DB's mother initially reported that DB denied that anything inappropriate had happened. Therefore, defense counsel was not deficient for failing to present these witnesses.

Defendant also argues that defense counsel was ineffective for failing to present his phone records. There is nothing in the record, either in defendant's postjudgment motion for an evidentiary hearing, or in his appellate brief, that demonstrates what the records would have shown. He simply argues that the records would prove that HB lied when she said that she did not delete any messages. Defendant "bears the burden of establishing the factual predicate for his claim." *Carbin*, 463 Mich at 600. The prosecutor admitted an exhibit showing a short text exchange between HB and defendant, and HB denied additional text communication. Considering the current record, defendant has not established that defense counsel was deficient in this regard or that the admission of phone records would have altered the outcome of the proceedings.

Finally, defendant asserts that defense counsel was ineffective for failing to present a photo allegedly depicting HB looking happy while on vacation with her family shortly after disclosing the allegations. This photo was not included in the lower court record. The photo may not have even been admissible because it was taken after the incident in question, and whether or not HB looked happy in an unrelated photo would not prove or disprove that HB was in emotional distress or that the incidents did not occur. See MRE 401. Defendant has not demonstrated that defense counsel's failure to present the photo fell below an objective standard of reasonableness or prejudiced defendant.

## 2. EXPERT WITNESS

Defendant further argues that he was denied the effective assistance of counsel because defense counsel failed to consult with and present an expert witness. The "failure to investigate and attempt to secure a suitable expert witness to assist in preparing the defense may constitute ineffective assistance," although "effective counsel need not always provide an equal and opposite expert." *People v Carll*, 322 Mich App 690, 702; 915 NW2d 387 (2018) (cleaned up).

In this case, defense counsel vehemently objected to the admission of Cottrell's testimony. When the trial court denied the defense motion to exclude Cottrell's testimony, defense counsel requested an adjournment to consult an expert. The trial court denied this request. Although defense counsel did not present an expert to rebut Cottrell's testimony, defense counsel extensively cross-examined Cottrell. "In many instances cross-examination will be sufficient to expose defects in an expert's presentation." *Id*. (cleaned up). Moreover, defendant has not identified a proposed expert witness or revealed the testimony such an expert would have provided to alter the outcome of the proceedings. "Without some indication that a witness would have testified favorably, a defendant cannot establish that counsel's failure to call the witness would have affected the outcome of his or her trial." *Id*. at 703. Defendant has failed to establish that the failure to call an expert witness resulted in prejudice.

## 3. UNANIMITY INSTRUCTION

Next, defendant argues that defense counsel was ineffective for failing to request a specific unanimity instruction for the CSC-IV charge. "A defendant has the right to a unanimous verdict and it is the duty of the trial court to properly instruct the jury on this unanimity requirement." *People v Martin*, 271 Mich App 280, 338; 721 NW2d 815 (2006). "Under most circumstances, a general instruction on the unanimity requirement will be adequate." *Id*. A trial court must, however, give a specific unanimity instruction when the prosecutor "offers evidence of alternative acts allegedly committed by the defendant and these alternative acts are materially distinct and there is reason to believe that the jury might be confused or disagree about the factual basis of a defendant's guilt. *Id*. "[A] specific unanimity instruction is not required in *all* cases in which more than one act is presented as evidence of the actus reus of a single criminal offense." *People v Cooks*, 446 Mich 503, 512; 521 NW2d 275 (1994). "[W]here materially identical evidence is presented with respect to each act, and there is no juror confusion, a general unanimity instruction will suffice." *Id*. at 512-513.

The alleged conduct underlying the CSC-IV charge occurred in a single evening. Defendant did not present a separate defense or offer materially distinct evidence or impeachment concerning any particular act. Rather, he denies all of the assaultive behavior. As a result, "the sole task of the jury was to determine the credibility of the victim with respect to the pattern of alleged conduct." *Cooks*, 446 Mich at 528. Therefore, defense counsel was not ineffective for failing to request such an instruction. Regardless, it is not reasonably probable that an unanimity instruction would have affected the outcome of the proceedings. There is no reason to believe that the jury convicted defendant by believing some of HB's allegations, but not others. Therefore, defendant has not demonstrated that he received ineffective assistance of counsel.

## 4. JOINDER

Defendant additionally contends that defense counsel was ineffective for conceding to joinder of the cases after the trial court ruled that evidence from one case would be admissible in the other. The evidence presented at trial alleged that defendant inappropriately touched young girls visiting his home. The evidence against defendant related to each victim was admissible in both cases, and, each victim would have been permitted to testify in each trial if the cases were tried separately. See *People v Gaines*, 306 Mich App 289, 305; 856 NW2d 222 (2014). Defense counsel was not deficient for conceding the joinder. Moreover, considering that defendant was acquitted of the charge related to DB, he cannot establish that any alleged error by counsel conceding to the joinder negatively affected the outcome of his trial. Accordingly, defendant has not demonstrated that his counsel was ineffective.

## 5. PSIR INTERVIEW

Finally, defendant argues that defense counsel was ineffective for failing to inform him that he had the right to have counsel present during his PSIR interview. Under the Sixth Amendment, a defendant facing incarceration has the right to counsel at all critical stages of the criminal process. *People v Williams*, 470 Mich 634, 641; 683 NW2d 597 (2004). Although sentencing is a critical stage of the criminal process, see *People v Evans*, 156 Mich App 68, 70; 401 NW2d 312 (1986), the preparation of the PSIR does not require counsel's presence at the interview, *People v Daniels*, 149 Mich App 602, 607; 386 NW2d 609 (1986).

Because defendant did not have the right to counsel during the PSIR interview, defense counsel was not ineffective for any failure to inform defendant that he could request to have counsel present. Defendant does not explain how the absence of counsel affected the outcome of his sentencing hearing. He asserts that the presence of counsel would have resulted in a more favorable PSIR, but he does not explain how. Indeed, at the sentencing hearing, defense counsel objected to several statements in the PSIR and to the guidelines. Defendant has not shown how the absence of counsel during the PSIR interview affected his sentencing.

Relatedly, given the evidence presented, and that defendant has not demonstrated that he was denied the effective assistance of counsel, the trial court did not abuse its discretion by denying defendant's request for an evidentiary hearing. See *People v Unger*, 278 Mich App 210, 216-217; 749 NW2d 272 (2008).

## C. UNAVAILABILITY OF TRANSCRIPTS

Next, defendant argues that his right to an appeal was impeded because the full transcript of DB's testimony is unavailable. An "inability to obtain the transcripts of criminal proceedings may so impede a defendant's right of appeal that a new trial must be ordered." *People v Horton*, 105 Mich App 329, 331; 306 NW2d 500 (1981). The unavailability of transcripts does not, however, always require a new trial. *People v Jackson*, 95 Mich App 565, 568; 291 NW2d 123 (1980). When the available records are sufficient to allow review of a defendant's claims, defendant's rights are satisfied. *People v Audison*, 126 Mich App 829, 835; 338 NW2d 235 (1983).

In this case, the proceedings from 4:30 p.m. until 4:46 p.m. on the second day of trial were not transcribed. DB was the last witness to testify that day, and it appears that the audio cut off during the jury questions. It is unknown how much of her testimony is missing from the transcript,

but her direct examination testimony, cross-examination, redirect examination, and recross-examination were properly transcribed. The trial court has explained that it was normal practice to dismiss everyone at 4:45 p.m. after it gave instructions to the jury, which usually took at least 5 to 10 minutes. Given this, it is clear that the transcript is not missing a significant portion of DB's testimony.

Defendant does not raise any claims concerning DB's testimony in this appeal, and he was acquitted of the charge related to her. She was not present during the incident involving HB, so she could not have provided any testimony directly related to HB's case. As a result, the existing transcript is sufficient for this Court to evaluate defendant's claims on appeal and a new trial is not warranted.

## D. SENTENCING

Finally, defendant argues that he is entitled to resentencing because the trial court improperly assessed 10 points for OV 4. A trial court's factual findings in sentencing must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 83 NW2d 340 (2013). We review de novo the application of these facts to the law. *Id*.

OV 4 concerns psychological injury to a victim. MCL 777.34(1). A score of 10 points should be assessed if "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). The fact that treatment has not been sought is not conclusive to the determination. MCL 777.34(2). A trial court may not assess points for OV 4 merely on a conclusion that serious psychological injury "would normally occur" in the circumstance. *People v White*, 501 Mich 160, 162; 905 NW2d 228 (2017).

In this case, the trial court determined that the 10-point assessment was proper on the basis that there was evidence that HB had received professional treatment and her counselor was present at trial. Although the trial court also noted the type of crime that was committed would likely result in psychological treatment, there was also evidence that HB was receiving professional treatment. Accordingly, the conclusion that HB suffered a serious psychological injury that required professional treatment was supported by a preponderance of the evidence.

Affirmed.

/s/ Brock A. Swartzle
/s/ Kirsten Frank Kelly
/s/ Christopher M. Murray